**East Carolina University**
Communication from Office of Student Rights & Responsibilities (OSRR) and/or Campus Living's Conduct (CLC)
252-328-6824  OSRR Main Telephone  •  osrr@ecu.edu  •  364 Wright Building, Main Campus
252-328-4663  CLC Main Telephone  •  clco@ecu.edu  •  100 Jones Residence Hall

February 18, 2016

John Doe

Sent electronically to John Doe

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number

Dear John Doe

I am writing to notify you that I have completed my investigation of the Title IX complaint, which was initially submitted to this Office through an incident report on November 22, 2015, which alleged a potential Title IX violation by you.

**The investigation is complete at this time. I was able to find, by a preponderance of evidence, a violation of the sexual misconduct policy and/or the Student Conduct Code and am referring this to the Director of the Office of Student Rights and Responsibilities ("OSRR") for review and appropriate follow-up.**

For your reference, attached is a copy of the Student Conduct Process as well as the Regulation on Sexual and Gender-Based Harassment and other forms of Interpersonal Violence-Interim.

The scope of our Office's investigation of this matter included the following:
 **review of applicable University policies;**
 **interview(s) with the Complainant;**
 **interview(s) with Witnesses; and**
 **review of other relevant documentation and follow-up conversations**

The University has thoroughly, carefully, and appropriately investigated the concerns brought forth. A report outlining the investigation and recommendation has been issued to the Director of the OSRR for review and appropriate follow-up.

Should you have any questions, please let me know. You may contact me at at butlerca14@ecu.edu or at 252-328-6824.

Sincerely,

*Caitlin Butler*

Caitlin Butler
Assistant Director

CC:   Tamika Wordlow, Director Office of Student Rights and Responsibilities
       Mandy Messerli, Associate Director Office of Student Rights and Responsibilities
       Michael Rager, Interim Associate Director Office of Student Rights and Responsibilities
       Katie Butler, Assistant Director Office of Student Rights and Responsibilities
       Chris Howell, Interim Assistant Director Office of Student Rights and Responsibilities
       Malorie Porter, Title IX Compliance Officer & Deputy Title IX Coordinator

East Carolina University is a constituent institution of the University of North Carolina.  An equal opportunity/affirmative action university, which accommodates the needs of individuals with disabilities.

Case 4:18-cv-00137-BO    Document 44-11    Filed 10/23/18    Page 1 of 40



**RESOURCE AND REPORTING GUIDE FOR STUDENTS ACCUSED OF INCIDENTS OF PROHIBITED CONDUCT**

**Table of Contents**

I.      Introduction

II.     If you are Accused of Prohibited Conduct
        A. Information for Respondents
            1. General
            2. Common Feelings After Being Accused
            3. Resources
            4. Retaliation Policy
        B. Investigation
            1. General Information
            2. Findings
            3. Support Person

III.    Disciplinary Procedure
        A. Introduction
        B. Disciplinary Action
        C. Student Conduct Hearing Procedures
        D. Appeals

IV.     Definitions

## I.      Introduction

East Carolina University, a constituent institution of the University of North Carolina, strives to be a national model for student success, public service and regional transformation and is built upon integrity, trust and mutual respect. Consistent with these values, the University is committed to providing a safe and non-discriminatory learning, living, and working environment for all members of the University community. The University does not discriminate on the basis of sex or gender in any of its education or employment programs and activities. To that end, the University has adopted a Regulation on Sexual and Gender Based Harassment and Other Forms of Interpersonal Violence that prohibits specific forms of behavior that violate Title IX of the Education Amendments of 1972 ("Title IX"); Title VII of the Civil Rights Act of 1964 ("Title VII"). Such behavior also requires the University to fulfill certain obligations under the Violence Against Women Reauthorization Act of

2013 ("VAWA") and the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act ("Clery Act").

The University prohibits Sexual Assault, Sexual Battery, Sexual Exploitation, Dating and Domestic Violence, Stalking, Sexual or Gender-Based Harassment, Complicity in the commission of any act prohibited by the Regulation, and Retaliation against a person for the good faith reporting of any of these forms of conduct or participation in any investigation or proceeding under the Regulation (collectively, "Prohibited Conduct"). These forms of Prohibited Conduct may be unlawful, undermine the character and purpose of the University, and will not be tolerated.

This document is to supplement the University's Regulation on Sexual and Gender Based Harassment and Other Forms of Interpersonal Violence and is in compliance with the Violence Against Women Amendments to the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act (Clery Act). This information is provided to inform individuals about their rights and options regarding the Regulation and resources available through both the University and the Greenville community.

The Violence Against Women Amendments to the Clery Act require colleges and universities to inform individuals of their rights and options regarding incidents of sexual assault, domestic violence, dating violence, and stalking. The information provided is not meant to substitute criminal proceedings. Information regarding how to pursue criminal charges can be found in this document, however the University's Regulation and procedures are not of a criminal nature and there is a fundamental difference between the University's procedure and a criminal one.

Students, faculty, and staff members who report violations of the Regulation will be given a copy of this document and will be advised of all rights and options available to them. This document and the overarching Regulation will also be available on the University's website as a reference.

## II.     If You Are Accused of Sexual Assault

### A.  Information for Respondents

1. General

Prohibited Conduct investigations are intended to be fair, unbiased, and prompt. The investigator will gather as much information as possible before making a determination about whether there was a policy violation.

If you have been named as the respondent in a Prohibited Conduct complaint, you will have the opportunity to respond to the allegation and present your side of the story. An investigator will contact you to schedule a meeting. At that meeting, you will be asked to provide your version of events.

Keep in mind that the University process is an administrative process and is not the same as a criminal process. A criminal process looks into whether a crime has been committed; the University process looks into whether a University policy has been violated. The University process uses the "preponderance of the evidence" standard, which weighs whether it is more likely than not that a policy violation occurred. This

is a much lower standard than the criminal standard, "beyond a reasonable doubt." A University process may result in a different finding than a criminal process because of the different burdens of proof, among other factors.

2.   Common Feelings after Being Accused of Sexual Violence

Emotional responses will vary from individual to individual. Being accused of sexual assault can be traumatic and life-changing. It's important to remember that your responses are not crazy; they are normal reactions to a difficult situation – being accused of sexual assault. Below are some common feelings you may experience.

Shock and Numbness

You may experience feelings of disbelief or denial about what happened.  You may feel emotionally detached or drained. Other reactions to the emotional shock may include: crying, anger, laughing nervously, withdrawing, or claiming to feel nothing or be "fine." Often individuals feel overwhelmed to the point of not knowing how to feel or what to do.

Disruption of Daily Life

You may feel preoccupied with thoughts about the incident. It may be difficult to concentrate, attend class, or focus on school work. You may have trouble sleeping, appetite changes, general anxiety, or depression.

Loss of Control

You may feel overwhelmed. You may also feel anxious, scared, or nervous and often have a difficult time concentrating. Decision that previously were made routinely before now may feel monumental.

Fear

You may fear what may happen and how your life may change. You may be afraid of what other peers or family may say about him/her or if there might be retaliation towards him/her. You may find himself/herself not knowing who to trust.

Anger

You may have different reasons to feel angry. Anger is an appropriate response to sexual assault. You may vary in how you express anger. Anger can be vented in safe and healthy ways, or can be internalized, where it may become irritability, anxiety, or depression. Please be careful to avoid unhealthy ways of coping with anger such as alcohol or drug use, cutting, or other self-destructive behavior.

Isolation

You may isolate yourself in fear of rumors or retaliation. You may not want to bother anyone because of embarrassment and fear of others judging you, so you do not talk about the incident or your feelings. Also you may withdraw or distract themselves from family or friends.

3.   Resources

Please refer to the chart provided regarding contact information for reporting resources. If it is an emergency situation, please call 911. If you have experienced violence, you are

encouraged to seek immediate assistance from police and healthcare providers for your physical safety, emotional support and medical care.

ECU PD can assist you in filing a criminal report regardless of whether the crime occurred on campus or not. This may include assisting with reporting to the Greenville Police Department or other local law enforcement.

If you are in need of medical assistance, the emergency room is located 1.9 miles from Main Campus at Vidant Medical Center, NC 27834. In addition, Student Health Services is available as an on-campus health resource for students. A Sexual Assault Nurse Examiner who is available to perform a sexual assault examination at Student Health Services can be reached by calling the 24 hour nurse assistance line at (252) 328-6841. Student Health is located in the Student Health Services building on Main Campus in between Joyner East and the Flanagan Building.

Report the incident to the Title IX Coordinator, LaKesha Alston Forbes at (252) 328 – 6804 or oed@ecu.edu. The Title IX Coordinator can assist you in identifying on and off campus resources and beginning an investigation through the University. The Title IX Coordinator can also assist in filing a criminal report should you wish to do so.

You may report the incident to the Dean of Students Office. This may be done in person or by phone through ECUCARES at (252) 737-5555. The Dean of Students Office is located on the 3rd Floor of the Wright Building.

Speak with a Confidential Resource about the matter. Confidential Resources will not be able to reveal information you share without your express consent. Counseling is available free of charge to ECU students through the Center for Counseling and Student Development (252) 328-6661 and, in the case of sexual trauma, through the Victim Advocate (252) 737-1466. Anything discussed with a counselor or the Victim Advocate is confidential and will not be shared with anyone without

4. Retaliation Policy

It is against the Student Code of Conduct as well as the University's Notice of Nondiscrimination to retaliate against individuals who file a complaint. Retaliation is any reprisal, interference, penalty, discrimination, coercion, or harassment of the individual in response to the filing of the complaint.

| EMERGENCY, LAW ENFORCEMENT, & MEDICAL RESOURCES | | | |
|---|---|---|---|
| Emergency: | | 911 | |
| Greenville Police Department: | Non-Emergency | (252) 329 - 4315 | 500 S. Greene St. |
| | Information Desk | (252) 329 - 4317 | |
| Pitt County Sheriff's Office: | Office Hours M - F, 8:00 - 5:00 | (252) 902 - 2800 | 100 W. 3rd St. |
| | 24 hour dispatch | (252) 830 - 4141 | |
| *Vidant Medical Center: | Information | (252) 847 - 4100 | 2100 Stantonsburg Rd. |
| | Emergency Department | (252) 847 - 0279 | |
| | | (252) 847 - 0191 | |
| | Minor Emergency Department | (252) 847 - 1537 | 2380 West Arlington Blvd. |

| UNIVERSITY | | | |
|---|---|---|---|
| ECU Police Department: | Emergency | 911 | Blount House |
| | Non-Emergency | (252) 328 - 6787 | 609 E. Tenth St. |
| | East Campus Hotline | (252) 328 - 0062 | |
| | West (Health Sciences) Campus Hotline | (252) 744 - 5080 | |
| Dean of Students Office: | | (252) 328 - 9297 | 362 Wright Building |
| ECU CARES: | | (252) 737 - 5555 | |
| Title IX Coordinator: | LaKesha Alston Forbes | (252) 328 - 6804 | |
| *Student Health Services: | 24 hour Nurse Assistance line | (252) 328 - 6841 | Student Health Services Building |
| Campus Security Authority: | See list of Campus Security Authorities and their contact information in the Annual Security & Fire Safety Report at http://www.ecu.edu/cs-admin/police/upload/2015-Annual-Security-and-Fire-Safety-Report.pdf | | |

| COUNSELING & VICTIM ADVOCACY RESOURCES | | |
|---|---|---|
| *Center for Counseling and Student Development | (252) 328 - 6661 | |
| *Victim Advocate (in cases of sexual trauma) | (252) 737 - 1466 | |

| COMMUNITY RESOURCES | | | |
|---|---|---|---|
| *REAL Crisis Intervention: | | (252) 758 - 4357 | 1011 Anderson St. |
| *Center for Family Violence Prevention: | 24 Hour Crisis Line | (252) 752 - 3811 | 150 E. Arlington Blvd., Ste. D |
| | Toll Free | (800) 537 - 2238 | |

*Items denoted with * are considered Confidential Resources.*

**B. Investigation**

    1.  General Information

    During the investigation, the investigator will gather information and evidence and interview other people involved, including any potential witnesses. The University tries to keep the investigation as private as possible and ask all participants to keep to themselves any information they learn through the investigation.

    We try to conduct the investigation in as timely a manner as possible, but there may be delays in coordinating meetings and gathering evidence. We try to keep you apprised of what is going on, but you are welcome to get in touch with us if you are wondering about the status of the investigation.

    Once the investigation is concluded, the Office for Student Rights and Responsibilities will notify both parties regarding whether conduct charges will be pursued.

    2.  Finding

    The investigator will determine whether there is a violation of University policy based on a preponderance of the evidence—that is, whether it is more likely than not that a policy violation occurred. The investigator does not make sanctioning decisions or recommendations. The investigator does provide both parties with receive notification regarding the investigation outcome. The investigator writes a comprehensive report, detailing the investigation and the evidence found and explaining the reasons for whether there is a finding or not. This report is provided to the Director of Office for Student Rights and Responsibilities. If there is a finding of a policy violation, the Director will determine whether charges will be pursued under the Student Code of Conduct. These charges can result in sanctions that range from educational tasks and counseling to probation, suspension and expulsion

    3.  Support Person

    The Student Code of Conduct provides that individuals charged with violations of the Code have the right to have an advisor of their choice present at all meetings throughout the disciplinary process. This advisor may be an attorney, however you are limited to one person serving as an advisor on your behalf. If you have additional questions regarding the Regulation, please see section 5.1.4. of the Student Code of Conduct.

**III.   Disciplinary Procedure**

    **A.  Introduction**

A student charged with Prohibited Conduct may be prosecuted through the criminal court system and also disciplined separately through the ECU Student Code of Conduct process. Even if the court system chooses not to prosecute, the accused student may be subject to ECU's disciplinary process. The ECU student code of conduct ("The Code") functions independent of the criminal justice system. At the student's expense, s/he may be represented by a licensed attorney or non-attorney advocate who may participate in accordance with UNC Policy Manual 700.4.1. The student conduct disciplinary process may precede, occur simultaneously, or follow court action. In the event the student conduct disciplinary process follows court action, the court proceedings and/or verdict may be considered in the student conduct and due process proceeding. Proceedings shall be conducted by officials trained on all forms of Prohibited Conduct. Moreover, they shall use the preponderance of evidence standard (which is "more likely than not" and the standard used by civil courts in the United States).

When necessary, temporary action may be taken by the institution in the form of immediate administrative action(s) pending the resolution of a conduct case in order to preserve the safety and well-being of the ECU community and its members. These actions include, but are not limited to, restriction of access or privileges, no-contact ban or removal from classes, and/or administrative suspension (e.g. immediate separation). For cases specific to Prohibited Conduct, in addition to the measures listed above, the university may take interim measures to protect the Complainant in the educational setting or workplace based on the facts specified in the allegation, including but not limited to: minimizing contact with the Respondent and allowing the Complainant to change academic and extracurricular activities or his or her living, transportation, dining, and working situation as appropriate. Both you and the complainant, in cases specific to Prohibited Conduct, will be provided information about available on and off campus resources, including but not limited to: victim advocacy, counseling/mental health services, disability support services, health services, and explanation and assistance regarding reporting a crime to campus or local law enforcement.

**B. <u>Disciplinary Action</u>**

Any student found by the Office of Student Rights and Responsibilities (OSRR) to have committed Prohibited Conduct may be subject to sever disciplinary sanctions, including suspension (a specified period of separation from enrollment at the University) or expulsion (permanent separation from enrollment at the University and at any other member institution of the University of North Carolina). For information regarding the range of possible sanctions that may be imposed following an institutional disciplinary procedure, please refer to the ECU Student Code of Conduct.

OSRR recognizes that violations of Prohibited Conduct are not the fault of the individual filing the complaint. OSRR encourages the report of Prohibited Conduct and therefore does not intend to hold complainants accountable for the student code of conduct violations that may have occurred along with violations of Prohibited Conduct. OSRR will use discretion to ensure the rights of the complainant are preserved.

The University does not tolerate retaliation against individuals who file a complainant. Students who retaliate such person will be held accountable under the Code.

**C.** **Student Conduct Hearing Procedures (for cases specific to Prohibited Conduct)**

Upon receipt of the findings from a Prohibited Conduct investigation, the OSRR Director or designee will review the report to determine whether or not the reported behavior is governed by the Code. If it is believed that the behavior is governed by the Code a case will be created and assigned to a hearing officer, independent of the investigation.

The hearing officer will submit notification to both you and the complainant announcing whether or not official charges are to be pursued. In cases were a potential outcome, if found responsible, is suspension or expulsion the case is referred to a Conduct Board. In cases were a potential outcome, if found responsible, is less than suspension the case will be addressed by a conduct administrator.

If the complainant wishes to participate he/she may request accommodations be made during the hearing procedures, such as special seating arrangements in the hearing room or attending telephonically, in order to conduct a fair, orderly hearing.

- He/she has the right to an objective and impartial evaluation of the complaint.
- He/she has the right to present information relevant to the alleged violation, including inviting witnesses.
- He/she has the right to submit a written impact statement.
- He/she has the right, after receiving written notice of the outcome, to review the decision, including if permitted under ECU policies and local, state, and federal law.
- He/she has the right to be informed of pertinent University-based support services and to be presented with an option of reporting the incident to law enforcement, if appropriate.
- He/she is entitled to the rights of the respondent as enumerated in section 4.1.1 of the student code conduct, such as the right to an observer/support person at the hearing; to have the same access to the proceedings as the you, including the ability to question witnesses; to be free of irrelevant questions about sexual history; and to appeal a decision based on grounds described in section 5.5. In cases where the you has an attorney present at the hearing, the Complainant also may have an attorney, at the Complainant's own expense, present at the hearing.

### D. **Appeals**

Both parties will be notified of the final outcome, which will include appeal information. Both parties will be notified if an appeal is submitted to the Office of Student Rights and Responsibilities and either party can appeal the outcome based on the grounds outlined in the Student Code of Conduct. In addition each party will have an opportunity to respond to any additions/arguments of the other. In appeals from a hearing with the conduct administrator, the Director of OSRR or designee will review the written record and make a determination as to whether a decision should be altered. This decision is final. In appeals from a hearing before the Conduct Board where suspension is assigned, the Director of OSRR will compile the written record and provide it to the Vice Chancellor for Student Affairs or designee who will make the final determination. In appeals from a hearing before the Conduct Board where expulsion is assigned, the Director of OSRR will compile the written record and provide it to the Vice Chancellor for Student Affairs who will make the final determination. If the Vice Chancellor determines that the student should be expelled from the University, the student has the right to file an appeal with the Board of Trustees. If the Board of Trustees determines that the student should be expelled from the University, the student has the right to file an appeal with the Board of Governors.

## IV.    Definitions

1.  **Sexual Assault** is:
    - Any penetration
    - However slight
    - With any object or body part (as described below)
    - Performed by a person upon another person

    Sexual Assault includes the penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without their consent. North Carolina law defines these crimes in its General Statutes sections 14-27.1 through 14-27.10 and 14-178.

2.  **Sexual Battery** is:
    - Any intentional sexual touching
    - However slight
    - With any object or body part (as described below)
    - Performed by a person upon another person or causing another person to touch their own or another's body in the manner described below.

Sexual Battery includes the intentional or attempted sexual touching of another person's clothed or unclothed body, including but not limited to the mouth, neck, buttocks, anus, genitalia, or breast, by another with any part of the body or any object in a sexual manner without their consent.

**Consent** is:
- Informed (knowing)
- Voluntary (freely given)
- Active (not passive), meaning that, through the demonstration of clear words or actions, a person has indicated permission to engage in mutually agreed-upon sexual activity

Consent is explicit approval and permission to engage in sexual activity demonstrated by clear actions, words, or writings. Consent is informed, freely given and mutually understood by all parties involved. If coercion, intimidation, threats, and/or physical force are used, there is no consent. If the Complainant was mentally or physically incapacitated or impaired so that the Complainant could not understand the fact, nature, or extent of the sexual situation, there is no consent; this includes conditions due to alcohol or drug consumption, or being asleep or unconscious, or under the age of legal consent, or unable to give consent under current law. Silence does not necessarily constitute consent, and past consent of sexual activities does not imply ongoing future consent. Whether the Respondent has taken advantage of a position of influence over the Complainant may be a factor in determining whether consent was freely given. Consent to some form of sexual activity cannot be automatically taken as consent to any other form of sexual activity. Consent can be withdrawn at any time.

Consent cannot be obtained by Force.   Force includes (a) the use of physical violence, (b) threats, (c) intimidation, and/or (d) coercion.

a) **Physical force** means exerting physical control over another person.  Examples of physical force include but are not limited to hitting, punching, slapping, kicking, restraining, choking, and brandishing or using any weapon.

b) **Threats** are words or actions that would compel a reasonable person to engage in unwanted sexual activity.   Examples of threats include but are not limited to verbal statements reflecting intent to harm a person physically, to reveal private information to harm a person's reputation, or to cause a person academic or economic harm.

c) **Intimidation** is an implied threat that causes reasonable fear in another person.   Examples of intimidation include but are not limited to: destroying property, brandishing a weapon, blocking an exit to cause fear.  A person's size, alone, may

not constitute intimidation; however, a person's size may be used in a way that does.

    d)   Coercion is the use of an unreasonable amount of pressure to gain sexual access. Coercion is more than an effort to persuade, entice, or attract another person to have sex. When a person makes clear a decision not to participate in a particular form of sexual activity, a decision to stop, or a decision not to go beyond a certain sexual interaction, continued pressure can be coercive. In evaluating whether coercion was used, the University will consider: (i) the frequency of the application of the pressure, (ii) the intensity of the pressure, (iii) the degree of isolation of the person being pressured, and (iv) the duration of the pressure.

Consent cannot be gained by taking advantage of the incapacitation of another, where the person initiating sexual activity knew or reasonably should have known that the other was incapacitated.

**Incapacitation** means that a person lacks the ability to make informed, rational judgments about whether or not to engage in sexual activity. A person who is incapacitated is unable, temporarily or permanently, to give Consent because of mental or physical helplessness, sleep, unconsciousness, or lack of awareness that sexual activity is taking place. A person may be incapacitated as a result of the consumption of alcohol or other drugs, or due to a temporary or permanent physical or mental health condition.

The University offers the following guidance on Consent and assessing incapacitation:

A person who wants to engage in a specific sexual activity is responsible for obtaining Consent for that activity. Lack of protest does not constitute Consent. Lack of resistance does not constitute Consent. Silence and/or passivity also do not constitute Consent. Relying solely on non-verbal communication before or during sexual activity can lead to misunderstanding and may result in a violation of the Regulation.

It is important not to make assumptions about whether a potential partner is consenting. In order to avoid confusion or ambiguity, participants are encouraged to discuss with one another before engaging in sexual activity. If confusion or ambiguity arises during sexual activity, participants are encouraged to stop and clarify a mutual willingness to continue sexual activity.

Consent to one form of sexual activity does not, by itself, constitute Consent to another form of sexual activity. For example, one should not presume that Consent to oral-genital contact constitutes Consent to vaginal or anal penetration. Consent to sexual activity on a prior occasion does not, by itself, constitute Consent to future sexual activity. In cases of prior relationships, the manner and nature of prior communications between the parties and the context of the relationship may have a bearing on the presence of Consent.

Consent may be withdrawn at any time. An individual who seeks to withdraw Consent must communicate, through clear words or actions, a decision to cease the sexual activity. Once Consent is withdrawn, the sexual activity must cease immediately.

In evaluating Consent in cases of alleged incapacitation, the University asks two questions: (1) *Did the person initiating sexual activity know that the other party was incapacitated? and if not*, (2) *Should a sober, reasonable person in the same situation have known that the other party was incapacitated?* If the answer to either of these questions is "YES," Consent was absent and the conduct is a violation of the Regulation.

Incapacitation is a state beyond drunkenness or intoxication. A person is not necessarily incapacitated merely as a result of drinking or using drugs. The impact of alcohol and other drugs varies from person to person.

One is not expected to be a medical expert in assessing incapacitation. One must look for the common and obvious warning signs that show that a person may be incapacitated or approaching incapacitation. Although every individual may manifest signs of incapacitation differently, typical signs include slurred or incomprehensible speech, unsteady gait, combativeness, emotional volatility, vomiting, or incontinence. A person who is incapacitated may not be able to understand some or all of the following questions: "Do you know where you are?" "Do you know how you got here?" "Do you know what is happening?" "Do you know whom you are with?"

One should be cautious before engaging in Sexual Contact or Sexual Intercourse when either party has been drinking alcohol or using other drugs. The introduction of alcohol or other drugs creates ambiguity for either party as to whether Consent has been sought or given. If one has doubt about either party's level of intoxication, the safe thing to do is to forego all sexual activity.

**_Being impaired by alcohol or other drugs is no defense to any violation of the Regulation._**

B. SEXUAL EXPLOITATION

Occurs when an individual takes non-consensual or abusive sexual advantage of another for his/her own advantage or benefit, or to benefit or advantage anyone other than the one being exploited, and that behavior does not otherwise constitute one of the other Prohibited Conduct offenses in the Regulation.

Examples of sexual exploitation include but are not limited to any of the following:

- Causing the incapacitation of another person (through alcohol, drugs, or any other means) for the purpose of compromising that person's ability to give

Consent to sexual activity;

- Allowing third parties to observe private sexual activity from a hidden location (e.g., closet) or through electronic means (e.g., Skype or livestreaming of images);
- Engaging in voyeurism (e.g., watching private sexual activity without the consent of the participants or viewing another person's intimate parts (including but not limited to genitalia, groin, breasts or buttocks) in a place where that person would have a reasonable expectation of privacy);
- Recording or photographing private sexual activity and/or a person's intimate parts (including but not limited to genitalia, groin, breasts or buttocks) without consent;
- Disseminating or posting images of private sexual activity and/or a person's intimate parts (including but not limited to genitalia, groin, breasts or buttocks) without consent;
- Prostituting another person; or
- Knowingly exposing another person to a sexually transmitted infection or virus without the other's consent.

## C.  DATING AND DOMESTIC VIOLENCE

**Dating Violence:**  is violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim. The existence of such a relationship shall be determined based on the reporting party's statement and with consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship. For the purposes of this definition, dating violence includes, but is not limited to, sexual or physical abuse of the threat of such abuse. Dating violence does not include acts covered under the definition of domestic violence. Any incident meeting this definition is considered a crime for the purposes of Clery Act reporting.

Under North Carolina law, a dating relationship is one wherein the parties are romantically involved over time and on a continuous basis during the course of the relationship. A casual acquaintance or ordinary fraternization between persons in a business or social context is not a dating relationship.

**Domestic Violence:**  is a felony or misdemeanor crime of violence committed: (A) by a current or former spouse or intimate partner of the victim; (B) by a person with whom the victim shares a child in common; (C) by a person who is cohabitating with, or has cohabitated with, the victim as a spouse or intimate partner; (D) by a person similarly situated to a spouse of the victim under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred; (E) by any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred.

As defined by North Carolina General Statutes section 50B-1, domestic violence means the commission of one or more of the following acts upon an aggrieved party or upon a minor

child residing with or in the custody of the aggrieved party by a person as listed above. It does not include acts of self-defense. Such acts include but are not limited to:

- Physical violence or attempted physical violence;
- Making one fear, or one's household members fear serious bodily injury or continued harassment;
- Stalking an individual or family member that rises to such a level as to inflict substantial emotional distress; or
- Committing any act defined as a rape or other sex offenses in North Carolina General Statute sections 14-27.2 through 14-27.7.

For the purpose of seeking a protective order under section 50B-1 of the N.C. General Statutes and its definition of domestic violence, the term "personal relationship" means a relationship wherein the parties involved: (A) Are current or former spouses; (B) Are persons of opposite sex who live together or have lived together; (C) Are related as parents and children, including others acting in loco parentis to a minor child, or as grandparents and grandchildren. (Note: an aggrieved party may not obtain an order of protection against a child or grandchild under the age of 16) (D) Have a child in common; (E) Are current or former household members; (F) Are persons of the opposite sex who are in a dating relationship or have been in a dating relationship.

Persons in same sex domestic relationships are protected from violent behavior under other statutes, and the University will investigate and address allegations of domestic violence by individuals who have cohabited as spouses or intimate partners.

D. STALKING

Stalking occurs when a person engages in a course of conduct directed at a specific person under circumstances that would cause a reasonable person to fear bodily injury or to experience substantial emotional distress.

Course of conduct means two or more acts, including but not limited to acts in which a person directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about another person, or interferes with another person's property. Substantial emotional distress means significant mental suffering or anguish.

Stalking includes "cyber-stalking," a particular form of stalking in which a person uses electronic media, such as the internet, social networks, blogs, cell phones, texts, or other similar devices or forms of contact.

E. SEXUAL OR GENDER-BASED HARASSMENT

**Sexual Harassment** is any unwelcome sexual conduct, request for sexual favors, or other unwanted conduct of a sexual nature, whether verbal, non-verbal, graphic, physical, or otherwise, when the conditions outlined in (1) and/or (2), below, are present.

**Gender-Based Harassment** includes harassment based on gender, sexual orientation, gender identity, or gender expression, which may include acts of aggression, intimidation, or hostility, whether verbal or non-verbal, graphic, physical, or otherwise, even if the acts do not involve conduct of a sexual nature, when the conditions outlined in (1) and/or (2), below, are present.

(1) Submission to or rejection of such conduct is made, either explicitly or implicitly, a term or condition of a person's employment, academic standing, or participation in any University programs and/or activities or is used as the basis for University decisions affecting the individual (often referred to as "*quid pro quo*" harassment); or

(2) Such conduct creates a hostile environment. A "hostile environment" exists when the conduct is sufficiently severe, persistent, or pervasive that it unreasonably interferes with, limits, or deprives an individual from participating in or benefitting from the University's education or employment programs and/or activities. Conduct must be deemed severe, persistent, or pervasive from both a subjective and an objective perspective. In evaluating whether a hostile environment exists, the University will consider the totality of known circumstances, including, but not limited to:

- The frequency, nature and severity of the conduct;
- Whether the conduct was physically threatening;
- The effect of the conduct on the Complainant's mental or emotional state;
- Whether the conduct was directed at more than one person;
- Whether the conduct arose in the context of other discriminatory conduct;
- Whether the conduct unreasonably interfered with the Complainant's educational or work performance and/or University programs or activities; and
- Whether the conduct implicates concerns related to academic freedom or protected speech.

A hostile environment can be created by persistent or pervasive conduct or by a single or isolated incident, if sufficiently severe. The more severe the conduct, the less need there is to show a repetitive series of incidents to prove a hostile environment, particularly if

the conduct is physical. A single incident of Sexual Assault, for example, may be sufficiently severe to constitute a hostile environment. In contrast, the perceived offensiveness of a single verbal or written expression, standing alone, is typically not sufficient to constitute a hostile environment.

F. RETALIATION

Retaliation means any act of interference, restraint, penalty, discrimination, coercion, reprisal, intimidation, threats, or harassment against an individual for using applicable policies responsibly (including making a charge of discrimination protected by the Regulation; testifying, assisting, or participating in a hearing, proceeding, review process or investigation of discrimination; opposing an illegal act; requesting a reasonable disability or religious accommodation; or exercising any other right protected by the Regulation).

G. COMPLICITY

Complicity is any act taken with the purpose of aiding, facilitating, promoting or encouraging the commission of an act of Prohibited Conduct by another person.

# Regulation on Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence - Interim

### *Version 1 (Current Version)*

| | |
|---|---|
| **Policy** | REG06.40.03 |
| **Title** | Regulation on Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence |
| **Category** | Human Resources |
| **Sub-category** | Diversity/EEO |
| **Authority** | Chancellor |
| **History** | Effective January 1, 2016, this Regulation replaces the following: |
| | Interim Regulation on Responding to Complaints of Sexual Harassment, Sexual Misconduct and/or Discrimination on the Basis of Sex; |
| | Sexual Harassment, Discrimination and Conflicts of Interest Policies and Procedures of East Carolina University; and |
| | Regulation Addressing Sexual Assault, Domestic and Dating Violence and Stalking as required by the Violence Against Women Act Amendments to the Clery Act – Interim. |
| **Contact** | Office for Equity and Diversity: 328-6804; |
| | Human Resources, Employee Relations: 328-9847; |
| | ECU Police Department: 328-6787; |
| | ECU Cares: 737-5555. |
| **Related Policies** | POL 05.25.02, Notice of Nondiscrimination and Affirmative Action Policy |
| | REG11.30.01, Student Conduct Process |
| | Faculty Manual Part XII, Section IV |
| | Faculty Manual Part IX, Section I |
| | REG06.35.02, Mediation and Grievance Procedure for SPA Employees |
| | Procedures for Reporting Harassment or Discrimination Based on an ECU Protected Class Against a CSS or EPA Non-Faculty Employee |
| | REG06.35.01, Review Process and Procedure for EPA Non-Faculty Employees |
| | Clinical Support Services Employee Handbook, Section 20 (for CSS) |

| Additional References | Resource and Reporting Guide for Student Reporting Incidents of Prohibited Conduct (A-1);

Resource and Reporting Guide for Students Accused of Incidents of Prohibited Conduct (A-2);

Resource and Reporting Guide for Employees Reporting Incidents of Prohibited Conduct (B-1);

Resource and Reporting Guide for Employees Accused of Incidents of Prohibited Conduct (B-2)

Jeanne Clery Act (20 US Code § 1092(f))

VAW Amendments

ECU PD

Domestic Violence, NC General Statute §50B-1

Stalking, NC General Statute §14-277.3A

Article 7A – Rape and Other Sex Offenses, NC General Statute §14-27.1 through §14-27.10

Article 7A – Specifics, NC General Statute §14-27.2 through §14-27.7

Incest, NC General Statute §14-178

ECU CARES

Title IX Coordinator

Report Disciplinary Complaint Against Student, OSRR

OSHR Employee Grievance Policy, Section 7

ECU Title IX Resources

Title IX OCR provisions

U.S. Department of Education Office for Civil Rights, April 2011 Dear Colleague Letter: Sexual Violence

U.S. Department of Education Office for Civil Rights, 2014 Guidance

Text of Title IX (20 U.S.C. 1681-1688)

U.S. Department of Education Office for Civil Rights Title IX General Information

Title IX Regulations

U.S. Department of Education Office for Civil Rights, Dear Colleague Letter: Sexual Violence Background, Summary, and Fast Facts

U.S. Department of Education Office for Civil Rights, Know Your Rights: Title IX Prohibits Sexual Harassment and Sexual Violence Where You Go to School

U.S. Department of Education Office for Civil Rights, Revised Sexual Harassment Guidance: Harassment of Students By School Employees, Other Students or Third Parties

U.S. Department of Education Office for Civil Rights, Sexual Harassment: It's Not Academic

U.S. Department of Justice The Campus Sexual Assault (CSA) Study |

# REGULATION ON SEXUAL AND GENDER-BASED HARASSMENT AND OTHER FORMS OF INTERPERSONAL VIOLENCE

**1. Introduction.**

East Carolina University, a constituent institution of the University of North Carolina, strives to be a national model for student success, public service and regional transformation and is built upon tolerance, civility and mutual respect. Consistent with these values, the University is committed to providing a safe and non-discriminatory learning, living, and working environment for all members of the University community. The University does not discriminate on the basis of sex or gender in any of its education or employment programs and activities. To that end, this Regulation prohibits specific forms of behavior that violate Title IX of the Education Amendments of 1972 ("Title IX"); Title VII of the Civil Rights Act of 1964 ("Title VII"). Such behavior also requires the University to fulfill certain obligations under the Violence Against Women Reauthorization Act of 2013 ("VAWA") and the

Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act ("Clery Act").

1.1. Prohibited Conduct. The University prohibits Sexual Assault, Sexual Battery, Sexual Exploitation, Dating and Domestic Violence, Stalking, Sexual or Gender-Based Harassment, Complicity in the commission of any act prohibited by this Regulation, and Retaliation against a person for the good faith reporting of any of these forms of conduct or participation in any investigation or proceeding under this Regulation (collectively, "Prohibited Conduct"). These forms of Prohibited Conduct may be unlawful, undermine the character and purpose of the University, and will not be tolerated.

1.2. Purpose. The University adopts this Regulation with a commitment to: (1) eliminating, preventing, and addressing the effects of Prohibited Conduct; (2) fostering the University's Community of Trust, in which Prohibited Conduct is not tolerated; (3) cultivating a climate where all individuals are well-informed and supported in reporting Prohibited Conduct; (4) providing a fair and impartial process for all parties; and (5) identifying the standards by which violations of this Regulation will be evaluated and disciplinary action may be imposed. Employees or Students who violate this Regulation may face disciplinary action up to and including termination or expulsion. The University will take prompt and equitable action to eliminate Prohibited Conduct, prevent its recurrence, and remedy its effects. The University conducts ongoing prevention, awareness, and training programs for Employees and Students to facilitate the goals of this Regulation. Every member of the University community should foster an environment free of Prohibited Conduct. All members of the University community are encouraged to take reasonable and prudent actions to prevent or stop an act of Prohibited Conduct. The University will support and assist community members who take such actions.

1.3. Application. This Regulation applies to all reports of Prohibited Conduct occurring on or after the effective date of this Regulation. Where the date of the Prohibited Conduct precedes the effective date of this Regulation, the definitions of misconduct in existence at the time of the alleged incident(s) will be used. The procedures under this Regulation, however, will be used to investigate and resolve all reports made on or after the effective date of this Regulation, regardless of when the incident(s) occurred, adjusting as appropriate, underway already.


## 2. To Whom This Regulation Applies

This Regulation applies to Students who are registered or enrolled for credit- or non-credit-bearing coursework ("Students"); University employees, consisting of all faculty, and staff, ("Employees"); and contractors, vendors, visitors, volunteers, guests or other third parties ("Third Parties") such as Student applicants.

2.1. Location of Prohibited Conduct. This Regulation pertains to acts of Prohibited Conduct committed by or against Students, Employees and Third Parties when:

2.1.1. the conduct occurs on property owned or controlled by the University ("University property");

2.1.2. the conduct occurs in the context of a University employment or education program or activity, including, but not limited to, University-sponsored study abroad, research, on-line, or internship programs; or

2.1.3. the conduct occurs outside the context of a University employment or education program or activity, but has continuing adverse effects on or creates a hostile environment for Students, Employees or Third Parties while on University property or in any University employment or education program or activity.

2.2. Conflicting Provisions: This regulation supersedes any conflicting provisions contained in previous regulations, including but not limited to the "Interim Regulation on Responding to Complaints of Sexual Harassment, Sexual Misconduct and/or Discrimination on the Basis of Sex", the "Sexual Harassment, Discrimination and Conflicts of Interest Policies and Procedures of East Carolina University", and the "Regulation Addressing Sexual Assault, Domestic and Dating Violence and Stalking as required by the Violence Against Women Act Amendments to the Clery Act – Interim". Where Prohibited Conduct violates this Regulation and also violates another Regulation, the University's response will be governed by the procedures referenced in this Regulation. Questions about which Regulation applies in a specific instance should be directed to the University's Title IX Coordinator at (252) 328-6804. Note that the University's Office for Equity and Diversity administers a separate regulation that addresses other forms of discrimination and harassment: "the Regulation on Responding to Complaints of Prohibited Discrimination, Harassment and/or Related Retaliation."

## 3. Applicable Procedures.

The specific procedures for reporting, investigating, and resolving Prohibited Conduct are based upon the nature of the Respondent's relationship to the University (Student, Employee, or Third Party). Each set of procedures referenced below is guided by the same principles of fairness and respect for Complainants and Respondents. "Complainant" means the Student, Employee or Third Party who presents as the victim of any Prohibited Conduct under this Regulation, regardless of whether that person makes a report or seeks action under this Regulation. "Respondent" means the Student, Employee or Third Party who has been accused of violating this Regulation.

3.1. Disciplinary Action. A Student or Employee determined by the University to have committed an act of Prohibited Conduct is subject to disciplinary action, up to and including separation from the University. Third Parties who commit Prohibited Conduct may have their relationships with the University terminated and/or their privileges of being on University premises withdrawn.

3.2. Procedures. The procedures referenced below provide for prompt and equitable response to reports of Prohibited Conduct. The procedures designate specific timeframes for major stages of the process and provide for thorough and impartial investigations that afford all parties notice and an opportunity to present witnesses and evidence and to view the information that will be used in determining whether a Regulation violation has occurred. The University applies the Preponderance of the Evidence standard when determining whether this Regulation has been violated. Meeting the preponderance of evidence standard constitutes a conclusion it is more likely than not that the alleged conduct occurred. This standard will be used to evaluate the evidence for purposes of making findings and drawing conclusions for an investigation conducted under this Regulation.

3.2.1. **Where the Respondent is a Student.** The procedures for responding to reports of Prohibited Conduct committed by Students are detailed in Appendix A: Investigating and Resolving Reports of Sexual and Gender- Based Harassment and Other Forms of Interpersonal Violence Committed by Students.

3.2.2. **Where the Respondent is an Employee.** The procedures for responding to reports of Prohibited Conduct committed by Employees are detailed in Appendix B: Investigating and Resolving Reports of Sexual and Gender- Based Harassment and Other Forms of Interpersonal Violence Committed by Employees.

3.2.3. **Where the Respondent is Both a Student and an Employee.**

3.2.3.1. Appendix A, the Student-Respondent procedures, will apply if the Respondent is a full-time Student but not a full-time Employee;

3.2.3.2. Appendix B, the Employee-Respondent procedures, will apply if the Respondent is a full-time Employee but not a full-time Student; or

3.2.3.3. If there is a question as to the predominant role of the Respondent, the University's Title IX Coordinator will determine which of the procedures applies based on the facts and circumstances (such as which role predominates in the context of the Prohibited Conduct). Further, where a Respondent is both a Student and an Employee, the Respondent may be subject to any of the sanctions applicable to Students or Employees.

3.2.4. **Where the Respondent is a Third Party.** The University's ability to take corrective action against a Third Party will be determined by the nature of the relationship of the Third Party to the University. The Title IX Coordinator will determine the appropriate manner of resolution consistent with the University's commitment to a prompt and equitable process consistent with federal law, federal guidance, and this Regulation.

## 4. Title IX Coordinator.

Under Title IX:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.

4.1. Role of the Title IX Coordinator. The Title IX Coordinator is charged with monitoring the University's compliance with Title IX; ensuring appropriate education and training; coordinating the University's investigation, response, and resolution of all reports under this Regulation; and ensuring appropriate actions to eliminate Prohibited Conduct, prevent its recurrence, and remedy its effects. The Title IX Coordinator has the authority to modify the timelines in any existing University process in order to ensure a prompt and equitable resolution to a complaint, in compliance with applicable law or regulations. The Title IX Coordinator is available to meet with any Student, Employee, or Third Party to discuss this Regulation or the accompanying procedures. The University has also designated Deputy Title IX Coordinators who may assist the Title IX Coordinator in the discharge of these responsibilities. The Title IX Coordinator and Deputy Title IX Coordinators receive appropriate training to discharge their responsibilities.

4.2. ECU Police. The East Carolina University Police Department (ECUPD) maintains the campus crime log and is responsible for collecting and analyzing the statistics that are reported in the Annual Security and Fire Safety Report. The ECU Police Department will record and report on the Annual Security and Fire Safety Report, reports of sex offense, domestic violence, dating violence, and stalking. The definitions of these offenses for the purpose of reporting statistics, as defined by the Uniform Crime Reporting National Incident-Based Reporting System, the FBI definitions, and the Violence Against Women Act, in compliance with the regulations for implementing the Clery Act.

4.3. Contact for Concerns. Concerns about the University's application of Title IX, VAWA, and the Clery Act, may be addressed to the Title IX Coordinator; the United States Department of Education, Clery Act Compliance Division (at clery@ed.gov); the United States Department of Education, Office for Civil Rights (at OCR@ed.gov or (800) 421-3481); and/or the Equal Employment Opportunity Commission (at info@eeoc.gov or (800) 669-4000).

4.3.1. The Title IX Coordinator can be contacted by telephone, email, or in person during regular office hours:
LaKesha Alston Forbes, Title IX Coordinator.
Old Cafeteria Building, Suite G-406
alstonl@ecu.edu
(252) 328-6804 (office)
http://www.ecu.edu/cs-acad/titleix/

## 5. Resources and Reporting Options.

The University offers a wide range of resources for all Students and Employees to provide support and guidance in response to any incident of Prohibited Conduct. For comprehensive information on accessing University and community resources, including emergency and ongoing assistance; health, mental health, and victim-advocacy services; options for reporting Prohibited Conduct to the University and/or law enforcement; and available support with academics, housing, and employment:

5.1. Students should refer to the Student Resource Guides (Additional Reference A-1 and Additional Reference A-2);

5.2. Employees should refer to the Employee Resource Guides (Additional Reference B-1 and Additional Reference B-2); and

5.3. Third Parties should contact the Title IX Coordinator to discuss available University and/or community resources and reasonably available assistance.

**6. Remedial and Protective Measures.**

The University offers a wide range of resources for Students and Employees, whether as Complainants or Respondents, to provide support and guidance throughout the initiation, investigation, and resolution of a report of Prohibited Conduct. The University will offer reasonable and appropriate accommodations and protective measures if requested and reasonably available, regardless of whether or not the event is reported to ECU Police or other law enforcement agencies and regardless of whether the victim desires to participate in University disciplinary proceedings or seek criminal charges. The goal of such measures is to facilitate the Complainant's continued access to University employment or education programs and activities. These measures may be both remedial (designed to address a Complainant's safety and well-being and continued access to educational opportunities) or protective (involving action against a Respondent). Accommodations and protective measures, which may be temporary or permanent, may include but are not limited to: no-contact directives, campus living modifications, transportation and parking modifications, academic modifications and support, work schedule modifications, investigatory placement, administrative suspension, and suspension from employment (with or without pay).

6.1. The University will maintain the privacy of any accommodations and protective measures provided under this Regulation to the extent practicable and will promptly address any violation of such measures. The Dean of Students Office and/or the Vice Chancellor with supervisory responsibilities has the discretion to impose and/or modify any accommodation or protective measure based on all available information and in consultation with the Title IX Coordinator. The Title IX Coordinator is available to meet with a Complainant or Respondent to address any concerns about the provision of interim measures.

6.2. The University will provide reasonable accommodations or protective measures to Third Parties as appropriate and available, taking into account the role of the Third Party and the nature of any contractual relationship with the University.

**7. Privacy and Confidentiality.**

The University is committed to protecting the privacy of all individuals involved in the investigation and resolution of a report under this Regulation to the extent allowed by law. The University also is committed to providing assistance to help Students, Employees and Third Parties make informed choices. With respect to any report under this Regulation, the University will make reasonable efforts to protect the privacy of participants, in accordance with applicable state and federal law, while balancing the need to gather information to assess the report and to take steps to eliminate Prohibited Conduct, prevent its recurrence, and remedy its effects. Privacy and confidentiality have distinct meanings under this Regulation

7.1. Privacy. Privacy means that personally identifiable information related to a report of Prohibited Conduct will be shared with a limited circle of University Employees who "need to know" in order to assist the assessment, investigation, and resolution of the report. All Employees who are involved in the University's response to reports of Prohibited Conduct receive specific training and guidance about sharing and safeguarding private information in accordance with state and federal law.

7.1.1. The privacy of Student education records will be protected in accordance with the Family Educational Rights and Privacy Act ("FERPA"), as outlined in the University's FERPA policy. The privacy of an individual's medical and related records generally is protected by the Health Insurance Portability and Accountability Act ("HIPAA"), excepting health records protected by FERPA. Access to an Employee's personnel records may be restricted in accordance with the North Carolina Human Resources Act, N.C. Gen. Stat. section 126-22 et seq. and the North Carolina Public Records Act, N.C. Gen. Stat. section 132-1 et seq. and the University's record retention policy

7.2. Confidentiality: Confidentiality exists in the context of laws that protect certain relationships, including with medical and clinical care providers (and those who provide administrative services related to the provision of medical and clinical care), mental health providers, counselors, and ordained clergy, all of whom may engage in confidential communications under the law. Communications with the Victim Advocate are generally considered privileged pursuant to N. C. Gen. Stat. sections 8-53.3, 8-53.7, 8-53.8, and 8-53.12. The University has designated individuals who have the ability to have privileged communications as "Confidential Resources." These resources adhere to strict standards of confidentiality, without sharing what an individual has told them other than in limited circumstances. These resources can provide information and other wellness services. When information is shared by an individual with a Confidential Employee or a community professional with the same legal protections, the Confidential Employee cannot reveal the information to any third party except when an applicable law or a court order requires or permits disclosure of such information. For example, information may be disclosed when: (i) the individual gives written consent for its disclosure;(ii) there is a concern that the individual will likely cause serious physical harm to self or others; or (iii) there is a legally mandated reporting requirement, regarding information concerning conduct involving suspected abuse, neglect or dependency of a juvenile (one who has not reached their eighteenth birthday and is not married, emancipated, or a member of the Armed Forces of the United States.

7.2.1. A **"Confidential Employee"** is (1) any Employee who is a licensed medical, clinical or mental-health professional when acting in that professional role in the provision of services to a patient ("health care providers"); and (2) any Employee providing administrative, operational and/or related support for such health care providers in their performance of such services.

7.2.1.1. **Duty to Report:** A Confidential Resource will not disclose information about Prohibited Conduct to the University's Title IX Coordinator without the individual's permission (subject to the exceptions set forth in the Confidentiality section of this Regulation)

7.3. A **"Responsible Employee"** is (1) a person designated as a supervisor of any University employee; (2) any person who is designated as a Campus Security Authority; or (3) any ECU employee responsible for coordinating or supervising clinical education experiences, practicum and/or internships. Responsible Employees must report incidents of Prohibited Conduct to the Title IX coordinator and must not attempt mediation with the Complainant and Respondent. Faculty and other ECU employees who are responsible for coordinating or supervising clinical education experiences, practicum and/or internships are considered to be Responsible Employees with respect to the students participating in those experiences, and are required to report any allegations of Prohibited Conduct that they relate relating to those students to the Title IX coordinator.

The University reserves the right to take disciplinary action against a Responsible Employee, up to and including discharge from employment, who fails to report Prohibited Conduct to the Title IX Coordinator.

7.3.1. **Duty to Report:** A Responsible Employee is required to report to the University's Title IX Coordinator all relevant details (obtained directly or indirectly) about an incident of Prohibited Conduct that involves a campus community member as a Complainant, Respondent, and/or witness, including dates, times, locations, and names of parties and witnesses. Responsible Employees include Resident Assistants, Graduate Teaching Assistants, and all other student-employees, when disclosures are made to any of them in their capacities as employees. Responsible Employees are not required to report information disclosed (1) at public awareness events (e.g., "Take Back the Night," candlelight vigils, protests, "survivor speak-outs" or other public forums in which students may disclose incidents of Prohibited Conduct; collectively, "Public Awareness Events"), or (2) during a student's participation as a subject in an Institutional Review Board-approved human subjects research protocol ("IRB Research"). The University may provide information about Students' Title IX rights and about available University and community resources and support at Public Awareness Events, however, and Institutional Review Boards may, in appropriate cases, require researchers to provide such information to all Student subjects of IRB Research.

7.3.1.1. **Responsibility to Report Prohibited Conduct Where Either the Complainant or the Respondent Is an Employee:** Under this Regulation, supervisors, management and human resources professionals are required to report to the University's Title IX Coordinator all relevant details about an incident of Prohibited Conduct where either the Complainant or the Respondent is an Employee. Reporting is required when such supervisors, management and human resource professionals know (by reason of a direct or indirect disclosure) or should have known of such Prohibited Conduct. For academic faculty, supervisors include department chairs, deans, and other unit administrators

7.3.2. **Training:** New supervisors (including those recently promoted to supervisor status) will be required to complete responsible employee training within 90 days of their status change. All responsible employees will be required to complete training by April 15, 2016, and every three calendar years thereafter

7.3.3. Campus Security Authority (CSA)

7.3.3.1. **Who are CSAs?** ECU officials who have significant responsibility for student and campus activities are designated as Campus Security Authorities. They are listed in the annual security report, which is accessible on the ECUPD website. These individuals include but are not limited to officials in the Office for Equity and Diversity, the ECUPD, Office of Student Rights and Responsibilities, the Campus Living Conduct Office, any Campus Living coordinator or resident advisor, an advisor of a registered student organization and coaches for athletic teams. ECU CSAs are listed in the annual security report that is published on October 1 each year on the ECU Police website. Each CSA must ensure that the Anonymous Crime Reporting Form is completed and submitted to the ECU Police Department.

7.3.3.2. **Who are not CSAs?** Faculty members who do not have any responsibility for student and campus activity beyond the classroom and clerical staff are not considered CSAs, and therefore are not required to complete the Anonymous Crime Reporting Form. All individuals receiving reports of crimes, are encouraged to offer to assist the reporter in completing an anonymous crime report for inclusion in the annual security report statistics. Counselors in the Center for Counseling and Student Development and medical providers in Student Health Services, are not required to report information received when they are functioning within the scope of their license, certification or religious training, and performing their official duties providing mental health counseling, medical care or religious counseling.

7.4. Confidential Resources. Consistent with the definition of Confidential Employees and licensed community professionals, there are a number of resources within the University and Greenville communities where Students and Employees can obtain confidential, trauma-informed counseling and support. These resources include the Victim Advocate (252-737-1466); and REAL Crisis Intervention (252-758-4357).

7.4.1. Students can also obtain such counseling at the Center for Counseling and Student Development. For a complete list of University and community-based confidential resources for Students, see the Resource and Reporting Guide for Students Reporting Incidents of Prohibited Conduct (A-1) and the Resource and Reporting Guide for Students Accused of Incidents of Prohibited Conduct (A-2).

7.4.2. Employees can also obtain such counseling through the Employee Assistance Program, either the Carolina Centre (252-757-0123) or the ECU Family Therapy Clinic (252-737-1415). For a complete list of University and community-based confidential resources for Employees, see the Resource and Reporting Guide for Employees Reporting Incidents of Prohibited Conduct (B-1) and the Resource and Reporting Guide for Employees Accused of Incidents of Prohibited Conduct (B-2).

## 8. Reporting.

There are multiple channels for reporting Prohibited Conduct. A Complainant may choose to report to the University, to law enforcement, to both, or to neither. These reporting options are not exclusive. Complainants may simultaneously pursue criminal and disciplinary action. The University will support Complainants in understanding, assessing and pursuing these options. There are certain persons on campus who must report a crime, but those reports need not identify the complainant, for instance, campus security authorities must complete anonymous crime reporting form, which does not require the disclosure of any personally identifying information about the victim. Rather it is collected so that the University can stay informed about trends, areas of particular concern and target educational needs

8.1. Law Enforcement. Complainants have the right to notify or decline to notify law enforcement. In keeping with its commitment to taking all appropriate steps to eliminate, prevent, and remedy all Prohibited Conduct, the University urges Complainants to report Prohibited Conduct *immediately* to local law enforcement by contacting:

• 911 (for emergencies)
• Greenville Police Department (252) 329-4315 (for non-emergencies)

- Pitt County Sheriff's Office (252) 902-2800 (for non-emergencies)
- ECU Police Department (252) 328-6787 (for non-emergencies)

8.1.1. Police have unique legal authority, including the power to seek and execute search warrants, collect forensic evidence, make arrests, and assist in seeking Emergency Protective Orders. The University will assist Complainants in notifying law enforcement if they choose to do so.

8.1.2. A University investigation with respect to Title IX is separate from a criminal investigation (into complaints alleging harassment or sexual violence that constitutes a criminal offense, such as assault, battery, rape or another form of violence or sexual violence). A Complainant can file a police report at any time, including during the duration of an investigation under this regulation. The University will assist in connecting the Complainant with the law enforcement agency of the applicable jurisdiction. The standard of evidence for conviction in criminal cases ("beyond a reasonable doubt") is a higher standard than the University will use in a Title IX investigation ("preponderance of the evidence"). An investigation will continue to go forward during a criminal investigation. Reporting to the police and/or the University does not end the investigatory responsibility for the University.

8.1.3. **Clery Act Reporting:** Pursuant to the Clery Act, the University includes statistics about certain offenses in its annual security report and provides those statistics to the United States Department of Education in a manner that does not include any personally identifying information about individuals involved in an incident. These statistics include the total number of crime reports that were "unfounded" and subsequently withheld from the crime statistics reported in the Annual Security and Fire Safety Report. Unfounded reports are those that have been fully investigated by sworn law enforcement personnel and, based on the results of this full investigation and evidence, have made formal determination that the crime report is false or baseless. Recovery of stolen property, stolen property that is of low value, the refusal of a victim to cooperate with law enforcement or the failure to make an arrest do not justify classifying a report as "unfounded." The Clery Act also requires the University to issue timely warnings to the University community about certain crimes that have been reported and may continue to pose a serious or continuing threat to Students and Employees. Consistent with the Clery Act, the University withholds the names and other personally identifying information of Complainants when issuing timely warnings to the University community

8.2. <u>The University.</u> The University also urges anyone who becomes aware of an incident of Prohibited Conduct to report the incident *immediately* to the University through the following reporting options:

8.2.1. By contacting the University's Title IX Coordinator or any Deputy Title IX Coordinator by telephone, email, or in person during regular office hours at their respective locations, email addresses and/or phone numbers listed in Section IV, above; or

8.2.2. By contacting ECU CARES, where members of the campus community can make reports of concerning behavior on campus, including acts of Prohibited Conduct. It can be accessed online at <u>www.ecu.edu/ecucares</u> or by phone at (252) 737-5555.

8.2.3. There is no time limit for reporting Prohibited Conduct to the University under this Regulation; however, the University's ability to respond may diminish over time, as evidence may erode, memories may fade, and Respondents may no longer be affiliated with the University. If the Respondent is no longer a Student or an Employee, the University will provide reasonably appropriate remedial measures, assist the Complainant in identifying external reporting options, and take reasonable steps to eliminate Prohibited Conduct, prevent its recurrence, and remedy its effects.

8.3. <u>The Good Samaritan.</u> The University's "Good Samaritan" regulation is applicable to a student(s) who summon(s) medical attention for a person (including themselves) in need of medical assessment and/or treatment for a problem to which the student may have contributed or caused by participating in the use and abuse of alcohol and/or other drugs While the University does not condone violations of the Student Code of Conduct or state and federal laws, the University may take into consideration potentially life-saving actions of students who act as "Good Samaritans" by reducing the disciplinary actions associated with alcohol and/or other drug use violations, including limited immunity to campus student conduct charges. More information about the <u>Good Samaritan Regulation</u> can be found on the University's Policy Manual website.


## 9. Prohibited Conduct.

Conduct under this Regulation is prohibited regardless of the sex, sexual orientation and/or gender identity/expression of the Complainant or Respondent. Prohibited Conduct includes the following specifically defined forms of behavior: Sexual Assault, Sexual Battery, Sexual Exploitation, Dating and Domestic Violence, Stalking, Sexual or Gender-Based Harassment, Complicity, and Retaliation.

9.1. <u>Sexual Violence.</u> Sexual Violence consists of (1) Sexual Assault and/or (2) Sexual Battery.

9.1.1. *Sexual Assault* is

9.1.1.1. Any penetration

9.1.1.2. However slight

9.1.1.3. With any object or body part (as described below)

9.1.1.4. Performed by a person upon another person.

9.1.1.5. Sexual Assault includes the penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without their consent. North Carolina law defines these crimes in its General Statutes sections 14-27.1 through 14-27.10 and 14-178.

9.1.2. *Sexual Battery* is

9.1.2.1. Any intentional sexual touching

9.1.2.2. However slight

9.1.2.3. With any object or body part (as described below)

9.1.2.4. Performed by a person upon another person or causing another person to touch their own or another's body in the manner described below

9.1.2.5. Sexual Battery includes the intentional or attempted sexual touching of another person's clothed or unclothed body, including but not limited to the mouth, neck, buttocks, anus, genitalia, or breast, by another with any part of the body or any object in a sexual manner without their consent.

9.1.3. *Consent* is

9.1.3.1. Informed (knowing)

9.1.3.2. Voluntary (freely given)

9.1.3.3. Active (not passive), meaning that, through the demonstration of clear words or actions, a person has indicated permission to engage in mutually agreed- upon sexual activity

9.1.3.4. Consent is explicit approval and permission to engage in sexual activity demonstrated by clear actions, words, or writings. Consent is informed, freely given and mutually understood by all parties involved. If coercion, intimidation, threats, and/or physical force are used, there is no consent. If the Complainant was mentally or physically incapacitated or impaired so that the Complainant could not understand the fact, nature, or extent of the sexual situation, there is no consent; this includes conditions due to alcohol or drug consumption, or being asleep or unconscious, or under the age of legal consent, or unable to give consent under current law. Silence does not necessarily constitute consent, and past consent of sexual activities does not imply ongoing future consent. Whether the Respondent has taken advantage of a position of influence over the Complainant may be a factor in determining whether consent was freely given. Consent to some form of sexual activity cannot be automatically taken as consent to any other form of sexual activity. Consent can be withdrawn at any time

9.1.3.5. **Force.** Consent cannot be obtained by Force. Force includes (1) the use of physical violence, (2) threats, (3) intimidation, and/or (4) coercion

9.1.3.5.1. Physical force means exerting physical control over another person. Examples of physical force include but are not limited to hitting, punching, slapping, kicking, restraining, choking, and brandishing or using any weapon

9.1.3.5.2. Threats are words or actions that would compel a reasonable person to engage in unwanted sexual activity. Examples of threats include but are not limited to verbal statements reflecting intent to harm a person physically, to reveal private information to harm a person's reputation, or to cause a person academic or economic harm.

9.1.3.5.3. Intimidation is an implied threat that causes reasonable fear in another person. Examples of intimidation include but are not limited to: destroying property, brandishing a weapon, blocking an exit to cause fear. A person's size, alone, may not constitute intimidation; however, a person's size may be used in a way that does.

9.1.3.5.4. Coercion is the use of an unreasonable amount of pressure to gain sexual access. Coercion is more than an effort to persuade, entice, or attract another person to have sex. When a person makes clear a decision not to participate in a particular form of sexual activity, a decision to stop, or a decision not to go beyond a certain sexual interaction, continued pressure can be coercive. In evaluating whether coercion was used, the University will consider: (i) the frequency of the application of the pressure, (ii) the intensity of the pressure, (iii) the degree of isolation of the person being pressured, and (iv) the duration of the pressure.

9.1.3.6. **Incapacitation.** Consent cannot be gained by taking advantage of the incapacitation of another, where the person initiating sexual activity knew or reasonably should have known that the other was incapacitated. **Incapacitation** means that a person lacks the ability to make informed, rational judgments about whether or not to engage in sexual activity. A person who is incapacitated is unable, temporarily or permanently, to give Consent because of mental or physical helplessness, sleep, unconsciousness, or lack of awareness that sexual activity is taking place. A person may be incapacitated as a result of the consumption of alcohol or other drugs, or due to a temporary or permanent physical or mental health condition.

9.1.4. *University Guidance on Consent and Assessing Incapacitation*:
A person who wants to engage in a specific sexual activity is responsible for obtaining Consent for that activity. Lack of protest does not constitute Consent. Lack of resistance does not constitute Consent. Silence and/or passivity also do not constitute Consent. Relying solely on non-verbal communication before or during sexual activity can lead to misunderstanding and may result in a violation of this Regulation.

It is important not to make assumptions about whether a potential partner is consenting. In order to avoid confusion or ambiguity, participants are encouraged to discuss with one another before engaging in sexual activity. If confusion or ambiguity arises during sexual activity, participants are encouraged to stop and clarify a mutual willingness to continue sexual activity.

Consent to one form of sexual activity does not, by itself, constitute Consent to another form of sexual activity. For example, one should not presume that Consent to oral-genital contact constitutes Consent to vaginal or anal penetration. Consent to sexual activity on a prior occasion does not, by itself, constitute Consent to future sexual activity. In cases of prior relationships, the manner and nature of prior communications between the parties will be a factor in determining whether consent was freely given.

Consent may be withdrawn at any time. An individual who seeks to withdraw Consent must communicate, through clear words or actions, a

decision to cease the sexual activity. Once Consent is withdrawn, the sexual activity must cease immediately.

In evaluating Consent in cases of alleged incapacitation, the University asks two questions: (1) *Did the person initiating sexual activity know that the other party was incapacitated?* and if not, (2) *Should a sober, reasonable person in the same situation have known that the other party was incapacitated?* If the answer to either of these questions is "YES," Consent was absent and the conduct is a violation of this regulation.

Incapacitation is a state beyond drunkenness or intoxication. A person is not necessarily incapacitated merely as a result of drinking or using drugs. The impact of alcohol and other drugs varies from person to person.

One is not expected to be a medical expert in assessing incapacitation. One must look for the common and obvious warning signs that show that a person may be incapacitated or approaching incapacitation. Although every individual may manifest signs of incapacitation differently, typical signs include slurred or incomprehensible speech, unsteady gait, combativeness, emotional volatility, vomiting, or incontinence. A person who is incapacitated may not be able to understand some or all of the following questions: "Do you know where you are?" "Do you know how you got here?" "Do you know what is happening?" "Do you know whom you are with?"

One should be cautious before engaging in Sexual Contact or Sexual Intercourse when either party has been drinking alcohol or using other drugs. The introduction of alcohol or other drugs creates ambiguity for either party as to whether Consent has been sought or given. If one has doubt about either party's level of intoxication, the safe thing to do is to forego all sexual activity

***Being impaired by alcohol or other drugs is no defense to any violation of this regulation.***

9.2. <u>Sexual Exploitation.</u> Occurs when an individual takes non-consensual or abusive sexual advantage of another for his/her own advantage or benefit, or to benefit or advantage anyone other than the one being exploited, and that behavior does not otherwise constitute one of the other Prohibited Conduct offenses in this Regulation. Examples of sexual exploitation include but are not limited to any of the following:

9.2.1. Causing the incapacitation of another person (through alcohol, drugs, or any other means) for the purpose of compromising that person's ability to give Consent to sexual activity;

9.2.2. Allowing third parties to observe private sexual activity from a hidden location (e.g., closet) or through electronic means (e.g., Skype or livestreaming of images);

9.2.3. Engaging in voyeurism (e.g., watching private sexual activity without the consent of the participants or viewing another person's intimate parts (including but not limited to genitalia, groin, breasts or buttocks) in a place where that person would have a reasonable expectation of privacy);

9.2.4. Recording or photographing private sexual activity and/or a person's intimate parts (including but not limited to genitalia, groin, breasts or buttocks) without consent;

9.2.5. Disseminating or posting images of private sexual activity and/or a person's intimate parts (including but not limited to genitalia, groin, breasts or buttocks) without consent;

9.2.6. Prostituting another person; or

9.2.7. Knowingly exposing another person to a sexually transmitted infection or virus without the other's consent.

9.3. <u>Dating and Domestic Violence.</u>

9.3.1. **Dating Violence:** is violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim. The existence of such a relationship shall be determined based on the reporting party's statement and with consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship. For the purposes of this definition, dating violence includes, but is not limited to, sexual or physical abuse of the threat of such abuse. Dating violence does not include acts covered under the definition of domestic violence. Any incident meeting this definition is considered a crime for the purposes of Clery Act reporting

9.3.1.1. Under North Carolina law, a dating relationship is one wherein the parties are romantically involved over time and on a continuous basis during the course of the relationship. A casual acquaintance or ordinary fraternization between persons in a business or social context is not a dating relationship

9.3.2. **Domestic Violence:** is a felony or misdemeanor crime of violence committed: (A) by a current or former spouse or intimate partner of the victim; (B) by a person with whom the victim shares a child in common; (C) by a person who is cohabitating with, or has cohabitated with, the victim as a spouse or intimate partner; (D) by a person similarly situated to a spouse of the victim under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred; (E) by any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred

9.3.2.1. As defined by North Carolina General Statutes section 50B-1, domestic violence means the commission of one or more of the following acts upon an aggrieved party or upon a minor child residing with or in the custody of the aggrieved party by a person as listed above. It does not include acts of self-defense. Such acts include but are not limited to:

   • Physical violence or attempted physical violence;
   • Making one fear, or one's household members fear serious bodily injury or continued harassment;
   • Stalking an individual or family member that rises to such a level as to inflict substantial emotional distress; or
   • Committing any of the defined sex offenses in North Carolina General Statute sections 14-27.2 through 14-27.7.

9.3.3. For the purpose of seeking a protective order under section 50B-1 of the N.C. General Statutes and its definition of domestic violence, the

term "personal relationship" means a relationship wherein the parties involved: (A) Are current or former spouses; (B) Are persons of opposite sex who live together or have lived together; (C) Are related as parents and children, including others acting in loco parentis to a minor child, or as grandparents and grandchildren. (Note: an aggrieved party may not obtain an order of protection against a child or grandchild under the age of 16) (D) Have a child in common; (E) Are current or former household members; (F) Are persons of the opposite sex who are in a dating relationship or have been in a dating relationship

9.3.4. Persons in same sex domestic relationships are protected from violent behavior under other statutes, and the University will investigate and address allegations of domestic violence by individuals who have cohabitated as spouses or intimate partners

9.4. Stalking. Stalking occurs when a person engages in a course of conduct directed at a specific person under circumstances that would cause a reasonable person to fear bodily injury or to experience substantial emotional distress.

9.4.1. Course of conduct means two or more acts, including but not limited to acts in which a person directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about another person, or interferes with another person's property. Substantial emotional distress means significant mental suffering or anguish.

9.4.2. Stalking includes "cyber-stalking," a particular form of stalking in which a person uses electronic media, such as the internet, social networks, blogs, cell phones, texts, or other similar devices or forms of contact

9.5. Sexual or Gender-Based Harassment.

9.5.1. *Sexual Harassment* is any unwelcome sexual conduct, request for sexual favors, or other unwanted conduct of a sexual nature, whether verbal, non-verbal, graphic, physical, or otherwise, when the conditions outlined in 9.5.3 and/or 9.5.4, below, are present

9.5.2. *Gender-Based Harassment* includes harassment based on gender, sexual orientation, gender identity, or gender expression, which may include acts of aggression, intimidation, or hostility, whether verbal or non-verbal, graphic, physical, or otherwise, even if the acts do not involve conduct of a sexual nature, when the conditions outlined in (9.5.3 and/or 9.5.4, below, are present.

9.5.3. Submission to or rejection of such conduct is made, either explicitly or implicitly, a term or condition of a person's employment, academic standing, or participation in any University programs and/or activities or is used as the basis for University decisions affecting the individual (often referred to as "*quid pro quo*" harassment); or

9.5.4. Such conduct creates a hostile environment. A "hostile environment" exists when the conduct is sufficiently severe, persistent, or pervasive that it unreasonably interferes with, limits, or deprives an individual from participating in or benefitting from the University's education or employment programs and/or activities. Conduct must be deemed severe, persistent, or pervasive from both a subjective and an objective perspective. In evaluating whether a hostile environment exists, the University will consider the totality of known circumstances, including, but not limited to:

• The frequency, nature and severity of the conduct;
• Whether the conduct was physically threatening;
• The effect of the conduct on the Complainant's mental or emotional state;
• Whether the conduct was directed at more than one person;
• Whether the conduct arose in the context of other discriminatory conduct;
• Whether the conduct unreasonably interfered with the Complainant's educational or work performance and/or University programs or activities; and
• Whether the conduct implicates concerns related to academic freedom or protected speech

9.5.4.1. A hostile environment can be created by persistent or pervasive conduct or by a single or isolated incident, if sufficiently severe. The more severe the conduct, the less need there is to show a repetitive series of incidents to prove a hostile environment, particularly if the conduct is physical. A single incident of Sexual Assault, for example, may be sufficiently severe to constitute a hostile environment. In contrast, the perceived offensiveness of a single verbal or written expression, standing alone, is typically not sufficient to constitute a hostile environment

9.6. Retaliation. Retaliation means any act of interference, restraint, penalty, discrimination, coercion, reprisal, intimidation, threats, or harassment against an individual for using applicable policies responsibly (including making a charge of discrimination protected by this Regulation; testifying, assisting, or participating in a hearing, proceeding, review process or investigation of discrimination; opposing an illegal act; requesting a reasonable disability or religious accommodation; or exercising any other right protected by this Regulation).

9.7. Complicity. Complicity is any act taken with the purpose of materially or substantively aiding, facilitating, promoting or encouraging the commission of an act of Prohibited Conduct by another person

## 10. Violations of Law.

Behavior that violates this Regulation may also constitute a crime under the laws of the jurisdiction in which the incident occurred. For example, North Carolina criminalizes and punishes some forms of Sexual Assault, Dating and Domestic Violence, Sexual Exploitation, Stalking, and Assault. The criminal statutes that may apply in cases Sexual Assault may be found in N.C. General Statutes sections 14-27.1 through 14-27.10 and 14-178. The criminal statutes that relate to Stalking may be found in N.C. General Statutes sections 14-277.3A. The criminal statutes that relate to Domestic Violence may be found in N.C. General Statutes section 50B. This compilation of criminal statutes is not exhaustive, but is offered to notify the University community that, some forms of Prohibited Conduct may also constitute crimes under North Carolina law, which may subject a person to criminal prosecution and punishment in addition to any sanctions under this Regulation.

**11. Prevention and Awareness Programs.**

The University is committed to the prevention of Prohibited Conduct through regular and ongoing education and awareness programs. Incoming Students and new Employees receive primary prevention and awareness programming as part of their orientation, and returning Students and current Employees receive ongoing training and related education. For a description of the University's Prohibited Conduct prevention and awareness programs, including programs on minimizing the risk of incidents of Prohibited Conduct and bystander intervention, see Appendix C.

**12. Training.**

The University provides training to Students and Employees to ensure they understand this Regulation and the topics and issues related to maintaining an education and employment environment free from harassment and discrimination. For a description of the University's training related to this Regulation, see Appendix C.

**13. Obligation to Provide Truthful Information.**

All University community members are expected to provide truthful information in any report or proceeding under this Regulation. Submitting or providing false or misleading information in bad faith or with a view to personal gain or intentional harm to another in connection with an incident of Prohibited Conduct is prohibited and subject to disciplinary sanctions under the University's Student Code of Conduct and disciplinary action under the appropriate Employee disciplinary policy. This provision does not apply to reports made or information provided in good faith, even when the alleged facts are later not substantiated.

**14. Annual Review.**

This Regulation is maintained by the Title IX Coordinator. The University will review and update this Regulation, as appropriate, by July 31 of each year. The University will evaluate, among other things, any changes in legal requirements, existing University resources, and the resolution of cases from the preceding year (including, but not limited to, timeframes for completion and sanctions and remedies imposed). The Title IX Coordinator shall certify to the Chancellor.

# APPENDIX A - INVESTIGATING AND RESOLVING REPORTS OF SEXUAL AND GENDER-BASED HARASSMENT AND OTHER FORMS OF INTERPERSONAL VIOLENCE COMMITTED BY STUDENTS

**1. Reporting Protocol**

1.1 If you are a Complainant reporting Prohibited Conduct or otherwise become aware of such behavior, please report the incident to at least one of the following offices so that the University can assist you and take measures to address the behavior: For immediate assistance following an incident of Prohibited Conduct:

1.1.1 Call 911 or the ECU Police at 252.328.6787;

1.1.2 Report to ECU Cares at 252.737.5555;

1.1.3 Report to LaKesha Alston Forbes, the Title IX Coordinator, at 252.328.6804; or

1.1.4 Report to the Office of Student Rights and Responsibilities at 252.328.6824.

1.2 Please take every step possible to preserve evidence:

1.2.1 Whenever possible, individuals should (1) not wash their face or hands; (2) not shower or bathe; (3) not brush their teeth; (4) not change clothes; (5) not straighten up the area where the assault took place; (6) not dispose of clothes or other items that were present during the assault; (7) not use the restroom or douche; and (7) should seek a medical exam immediately.

1.2.2 Please report the crime and seek medical attention and counseling even if evidence has not been preserved.

1.3 Options Regarding Notifying Law Enforcement

1.3.1 Individuals may choose to notify law enforcement of relevant jurisdiction (ECU Police, Greenville Police, Pitt County Sheriff, etc.) and will be provided the assistance of an ECU administrator in contacting these authorities if the individuals wishes.

1.3.2 Individuals may also decline to notify law enforcement of incidents of sexual assault, domestic violence, dating violence, and stalking.

1.3.3 ECU Police will enforce lawfully issued orders of protection provided by members of the ECU community.

1.4 . **For Allegations Against A Student**: Any individual who believes that, due to the conduct of a student, he/she has been the Complainant of Prohibited Conduct or who feels that he/she has been retaliated against for his/her good faith reporting of allegations or his/her participation in an investigation of alleged harassment or discrimination should file a Title IX Complaint with Title IX or ECU Cares to initiate an investigation.

1.5 **For Allegations Against A University Employee**: Anyone who believes that, due to the conduct of a University employee, he/she has been the Complainant of Prohibited Conduct, or who feels that he/she has been retaliated against for his/her good faith reporting of allegations or his/her participation in an investigation of alleged prohibited harassment and discrimination should file a Title IX complaint with the Office for Equity and Diversity to initiate an investigation.

1.6 If there is a concern about an individual that is not an ECU employee or student, please contact the Title IX Coordinator in the Office for Equity and Diversity for appropriate handling.

1.7 Complaints outlining the nature of the alleged prohibited conduct can be submitted to the Office for Equity and Diversity by any of the following means:

1.7.1. Completing the online Complaint Form;

1.7.2. Submitting a written report in person or via mail using the contact information above.

1.7.3. Submitting a report verbally in person or by telephone using the contact information above

## 2. Investigation Principles

2.1. The University will investigate and act upon information that is provided to it, including but not limited to third party reports, about allegations of Prohibited Conduct.

2.2. The University is committed to the following when investigating complaints:

2.2.1. Basing findings on the preponderance of the evidence standard;

2.2.2. Treating all parties fairly and equally;

2.2.3. Not attempting to resolve complaints of Prohibited Conduct through mediation between the parties

2.2.4. Notifying all parties that the investigation will be impartial, prompt and thorough.

2.2.5 Permitting both individuals equal opportunities to have others present, including an advisor of his/her choice; be given timely notice of meetings and will be given access to the pertinent information that will be used in the proceedings.

2.2.6 Providing both individuals the opportunity to present witnesses and evidence during the investigation and in any disciplinary proceeding, and to have a support person present, consistent with applicable policy.

2.2.7 Declining to permit evidence of Complainant's past relationships with anyone other than the Respondent to be included as part of either the investigation or appeal process

2.2.8 Providing, at a minimum, both parties with a status update every 30 calendar days;

2.2.9. Permitting either party with the opportunity to appeal in accordance with applicable University policies and procedures;

2.2.10 Maintaining all documentation related to the investigation and related proceedings in accordance with University record retention policies; and

2.2.11. Investigating Prohibited Conduct between students in accordance with the attached Standard Operating Procedure.

2.3. Responsible Employees **must** report allegations of Prohibited Conduct immediately to the Title IX Coordinator, in order to allow the University to conduct an investigation. Failure to do so may result in disciplinary action by the University, up to and including dismissal

2.3.1 Responsible Employees **do not** need to determine whether or not the allegations reported to them occurred, however, they must report the names of the alleged perpetrator and subject of the conduct involved, as well as relevant facts they may have, including the date, time, and location to the Title IX coordinator or appropriate designee.

2.3.2. Responsible Employees **should** also inform Complainants of (1) the Responsible Employee's reporting obligation to the Title IX Coordinator or appropriate designee; (2) the Complainant's option to request that their confidentiality be maintained by ECU, which will be considered and (3) that a student Complainant can share information confidentially with counselors in the Center for Counseling and Student Development, medical providers in Student Health Services, and the Complainants' Advocate.

2.4. Conflict of Interest. If any party involved in an investigation is aware of a real or perceived conflict of interest that will prevent the investigator from rendering an impartial decision, they should notify the Title IX Coordinator and request an alternate investigator. The University may also appoint an alternate investigator absent a request from a party if it learns of a real or perceived conflict of interest and the parties will be notified as appropriate.

2.5 All Investigators and hearing officials receive training related to Prohibited Conduct.

## 3. University Actions Upon Receipt of Report

3.1 When the University receives a report of Prohibited Conduct, Complainants and Respondents will be provided with written notification about accommodations and protective measures such as existing counseling, health, mental health, Complainant advocacy, legal assistance, visa and immigration assistance, financial aid, and other services, including changes to academic, work and transportation schedules, which will be available to both parties.

3.2 Accommodations and protective measures are provided if requested and reasonably available, regardless of whether or not the event is

reported to ECU Police or other law enforcement agencies and regardless of whether the Complainant desires to participate in University disciplinary proceedings or seek criminal charges.

3.3 When a Complainant reports an incident of Prohibited Conduct, the Complainant will be provided a written explanation of the rights and options available to him or her by the University. This will be provided regardless of whether the incident occurred on or off campus.

3.4 Complainants reporting Prohibited Conduct may request assistance for the following situations from the corresponding offices:

3.4.1 The ECU Police Department can assist with protective orders and coordination of protective measures with the Offices of the Dean of Students and Human Resources.

3.4.2 For academic accommodations, the Dean of Students Office offers assistance.

3.4.3 For on-campus living accommodations, the office of Campus Living offers assistance.

3.4.4 For transportation accommodations, Student Transit, SafeRide, and ECU Police offer assistance.

3.4.5 For employment accommodations, faculty and staff employees can contact Human Resources.

3.4.6 For student employment accommodations, student employees can contact the Dean of Students Office.

3.5 When the University, through any of the offices identified in Section 1, herein above, a Campus Security Authority, the supervisor of any employee, or the coordinator of any internship, clinical education, practicum, or study abroad experience, receives a report of Prohibited Conduct under this regulation, a multi-disciplinary team, the Sexual Misconduct Response Team (SMRT) will review the report to determine if there is additional assistance to be provided, and will receive periodic updates about the status of the investigation regarding the report.

**4. Disciplinary Action Against Respondents.**

4.1 If disciplinary action is pursued, the University will determine which disciplinary proceedings should apply based on the status of the Respondent (faculty member, staff employee, employee not subject to the state personnel act, student) at the time the incident occurred.

4.2 The University endeavors, in and through each of the listed disciplinary proceeding it conducts, to provide a prompt, fair and impartial process and to complete the process of investigation and determination of responsibility within a reasonable time frame, typically sixty days, depending upon the complexity of the investigation and severity and extent of the alleged conduct. This timeline may be extended by the Title IX Coordinator with notice to the parties. A University official will explain to involved individuals the steps and timelines of the applicable disciplinary process.

4.3 Depending upon the applicable process, a hearing may be conducted by an individual university administrator, a faculty panel, an employee grievance board, or the student conduct board. Complainants and Respondents may elect or decline to participate in any relevant process, but the University must reserve the right to proceed regardless of Complainant or Respondent participation if it determines that is in the best interest of the ECU community.

4.3.1 All hearing officials receive training related to Prohibited Conduct.

4.4 The following processes describe the additional steps, anticipated timeline and decision- making process in more detail:

4.4.1 When the Respondent is a student, the attached Standard Operating Procedure and the REG 11.30.01, Student Conduct Process, Section 5;

4.4.2 When the Respondent is a faculty member, ECU Faculty Manual, Part XII, Section IV, and Part IX, Section I include detailed timelines regarding these proceedings;

4.4.3 When the Grievant or Respondent is an SPA employee, REG 06.35.02, Mediation and Grievance Procedure for SPA Employees;

4.4.4 When the Respondent is an EPA non-faculty employee, the attached Standard Operating Procedure and POL 06.35.01, Review Process and Procedures for EPA Non-Faculty Employees; and

4.4.5 When the Respondent is a Clinical Support Staff employee, the attached Standard Operating Procedure and the Clinical Support Services Employee Handbook.

4.5 Standard of Proof: In every investigation of a case of Prohibited Conduct the University will utilize the preponderance of the evidence standard ("more likely than not") to determine whether or not such misconduct occurred; after the determination has been made, the standard for determining an appropriate sanction will be as provided below:

4.5.1 In disciplinary proceedings to determine the appropriate sanctions for a student, a preponderance of the evidence is required to determine that the student has violated the Student Code of Conduct.

4.5.2 In disciplinary proceedings to determine the appropriate sanction for a member of the tenured faculty, clear and convincing evidence is required that the misconduct warrants a serious sanction, as outlined in the ECU Faculty Manual Part IX, Section I, section VI.

4.5.3 In disciplinary proceedings to determine the appropriate sanction regarding misconduct by employees not holding a faculty appointment, the standard is whether there is just cause for the recommended action.

4.6 Disciplinary Results. The Result, as provided by federal law is any initial, interim, and/or final decision by any official or entity authorized to resolve disciplinary matters within the institution and must include any sanctions imposed by the institution. Subject to any overriding provision of law, the Result of any institutional disciplinary proceeding that arises from an allegation of sexual assault, domestic violence, dating violence, or stalking will be provided in writing to both parties at the same time, to include:

4.6.1 Any initial, interim, and final decision by any official or entity authorized to resolve disciplinary matters within the institution;

4.6.2 A brief rationale and any sanctions imposed;

4.6.3 The University's procedures for either party to appeal the result of the institutional disciplinary proceeding; and

4.6.4 Notice of any change to the result and a statement explaining when said result becomes final.

# APPENDIX B - INVESTIGATING AND RESOLVING REPORTS OF SEXUAL AND GENDER-BASED HARASSMENT AND OTHER FORMS OF INTERPERSONAL VIOLENCE COMMITTED BY EMPLOYEES

## 1. Reporting Protocol

1.1 If you are a Complainant reporting Prohibited Conduct or otherwise become aware of such behavior, please report the incident to at least one of the following offices so that the University can assist you and take measures to address the behavior: For immediate assistance following an incident of Prohibited Conduct:

1.1.1 Call 911 or the ECU Police at 252.328.6787;

1.1.2 Report to ECU Cares at 252.737.5555; or

1.1.3 Report to LaKesha Alston Forbes, the Title IX Coordinator, at 252.328.6804

1.2 Please take every step possible to preserve evidence:

1.2.1 Whenever possible, individuals should (1) not wash their face or hands; (2) not shower or bathe; (3) not brush their teeth; (4) not change clothes; (5) not straighten up the area where the assault took place; (6) not dispose of clothes or other items that were present during the assault; (7) not use the restroom or douche; and (7) should seek a medical exam immediately.

1.2.2 Please report the crime and seek medical attention and counseling even if evidence has not been preserved.

1.3 <u>Options Regarding Notifying Law Enforcement</u>

1.3.1 Individuals may choose to notify law enforcement of relevant jurisdiction (ECU Police, Greenville Police, Pitt County Sheriff, etc.) and will be provided the assistance of an ECU administrator in contacting these authorities if the individuals wishes.

1.3.2 Individuals may also decline to notify law enforcement of incidents of sexual assault, domestic violence, dating violence, and stalking.

1.3.3 ECU Police will enforce lawfully issued orders of protection provided by members of the ECU community.

1.4 . **For Allegations Against A Student:** Any individual who believes that, due to the conduct of a student, he/she has been the Complainant of Prohibited Conduct or who feels that he/she has been retaliated against for his/her good faith reporting of allegations or his/her participation in an investigation of alleged prohibited harassment or discrimination should file a Title IX complaint with the Title IX Coordinator or ECU Cares to initiate an investigation.

1.5 **For Allegations Against A University Employee:** Anyone who believes that, due to the conduct of a University employee, he/she has been the Complainant of Prohibited Conduct, or who feels that he/she has been retaliated against for his/her good faith reporting of allegations or his/her participation in an investigation of alleged prohibited harassment or discrimination should file a Title IX complaint with the Office for Equity and Diversity to initiate an investigation.

1.6 If there is a concern about an individual that is not an ECU employee or student, please contact the Title IX Coordinator in the Office for Equity and Diversity for appropriate handling.

1.7 Complaints outlining the nature of the alleged prohibited conduct can be submitted to the Office for Equity and Diversity by any of the following means:

1.7.1. Completing the <u>online Complaint Form</u>;

1.7.2. Submitting a written report in person or via mail using the contact information above;

1.7.3. Submitting a report verbally in person or by telephone using the contact information above.

## 2. Investigation Principles

2.1. The University will investigate and act upon information that is provided it, including but not limited to third party reports, about allegations of Prohibited Conduct.

2.2. The University is committed to the following when investigating complaints:

2.2.1. Basing findings on the preponderance of the evidence standard;

2.2.2. Treating all parties fairly and equally;

2.2.3. Not attempting to resolve complaints of Prohibited Conduct through mediation between the parties

2.2.4. Notifying all parties that the investigation will be impartial, prompt and thorough.

2.2.5 Permitting both individuals equal opportunities to have others present, including an advisor of his/her choice; be given timely notice of meetings and will be given access to the pertinent information that will be used in the proceedings.

2.2.6 Providing both individuals the opportunity to present witnesses and evidence during the investigation and in any disciplinary proceeding, and to have a support person present, consistent with applicable policy.

2.2.7 Declining to permit evidence of Complainant's past relationships with anyone other than the Respondent to be included as part of either the investigation or appeal process

2.2.8 Providing, at a minimum, both parties with a status update every 30 calendar days;

2.2.9. Permitting either party with the opportunity to appeal in accordance with applicable University policies and procedures;

2.2.10 Maintaining all documentation related to the investigation and related proceedings in accordance with University record retention policies; and

2.2.11. Investigating Prohibited Conduct in accordance with the policies outlined in section 4.

2.3. Responsible Employees **must** report allegations of Prohibited Conduct immediately to the Title IX Coordinator, in order to allow the University to conduct an investigation. Failure to do so may result in disciplinary action by the University, up to and including dismissal

2.3.1 Responsible Employees **do not** need to determine whether or not the allegations reported to them occurred, however, they must report the names of the alleged perpetrator and subject of the conduct involved, as well as relevant facts they may have, including the date, time, and location to the Title IX coordinator or appropriate designee.

2.3.2. Responsible Employees **should** also inform Complainants of (1) the Responsible Employee's reporting obligation to the Title IX Coordinator or appropriate designee; (2) the Complainant's option to request that their confidentiality be maintained by ECU, which will be considered and (3) that a student Complainant can share information confidentially with counselors in the Center for Counseling and Student Development, medical providers in Student Health Services, and the Complainants' Advocate.

2.4. Conflict of Interest. If any party involved in an investigation is aware of a real or perceived conflict of interest that will prevent the investigator from rendering an impartial decision, they should notify the Title IX Coordinator and request an alternate investigator. The University may also appoint an alternate investigator absent a request from a party if it learns of a real or perceived conflict of interest and the parties will be notified as appropriate.

**2.5 All Investigators and hearing officials receive training related to Prohibited Conduct.**

## 3. University Actions Upon Receipt of Report

3.1 When the University receives a report of Prohibited Conduct, Complainants and Respondents will be provided with written notification about accommodations and protective measures such as existing counseling, health, mental health, Complainant advocacy, legal assistance, visa and immigration assistance, financial aid, and other services, including changes to academic, work and transportation schedules, which will be available to both parties.

3.2 Accommodations and protective measures are provided if requested and reasonably available, regardless of whether or not the event is reported to ECU Police or other law enforcement agencies and regardless of whether the Complainant desires to participate in University disciplinary proceedings or seek criminal charges.

3.3 When a Complainant reports an incident of Prohibited Conduct, the Complainant will be provided a written explanation of the rights and options available to him or her by the University. This will be provided regardless of whether the incident occurred on or off campus.

3.4 Complainants reporting Prohibited Conduct may request assistance for the following situations from the corresponding offices:

3.4.1 The ECU Police Department can assist with protective orders and coordination of protective measures with Human Resources.

3.4.2 For transportation accommodations, Student Transit, SafeRide, and ECU Police offer assistance.

3.4.3 For employment accommodations, faculty and staff employees can contact Human Resources.

3.5 When the University, through any of the offices identified in Section 1, herein above, a Campus Security Authority, the supervisor of any employee, or the coordinator of any internship, clinical education, practicum, or study abroad experience, receives a report of Prohibited Conduct under this regulation, a team will review the report to determine if there is additional assistance to be provided, and will receive periodic updates about the status of the investigation regarding the report.

## 4. Disciplinary Action Against Respondents.

4.1 If disciplinary action is pursued, the University will determine which disciplinary proceeding to apply based on the status of the Respondent (faculty member, staff employee, employee not subject to the state personnel act, student) at the time the incident occurred.

4.2 The University endeavors, in and through each of the listed disciplinary proceeding it conducts, to provide a prompt, fair and impartial process and to complete the process of investigation and determination of responsibility within a reasonable time frame, typically sixty days, depending upon the complexity of the investigation and severity and extent of the alleged conduct. This timeline may be extended by the Title IX Coordinator with notice to the parties. A University official will explain to involved individuals the steps and timelines of the applicable disciplinary process.

4.3 Depending upon the applicable process, a hearing may be conducted by an individual university administrator, a faculty panel, an employee grievance board, or the student conduct board. Complainants and Respondents may elect or decline to participate in any relevant process, but the University must reserve the right to proceed regardless of Complainant or Respondent participation if it determines that is in the best interest of the ECU community.

4.3.1 All hearing officials receive training related to Prohibited Conduct.

4.4 The following processes describe the additional steps, anticipated timeline and decision- making process in more detail:

4.4.1 When the Respondent is a student, the attached Standard Operating Procedure and the REG 11.30.01, Student Conduct Process, Section 5;

4.4.2 When the Respondent is a faculty member, ECU Faculty Manual, Part XII, Section IV, and Part IX, Section I include detailed timelines regarding these proceedings;

4.4.3 When the Grievant or Respondent is an SPA employee, REG 06.35.02, Mediation and Grievance Procedure for SPA Employees;

4.4.4 When the Respondent is an EPA non-faculty employee, the attached Standard Operating Procedure and POL 06.35.01, Review Process and Procedures for EPA Non-Faculty Employees; and 4.4.5 When the Respondent is a Clinical Support Staff employee, the attached Standard Operating Procedure and the Clinical Support Services Employee Handbook.

4.5 Standard of Proof: In every investigation of a case of Prohibited Conduct the University will utilize the preponderance of the evidence standard ("more likely than not") to determine whether or not such misconduct occurred; after the determination has been made, the standard for determining an appropriate sanction will be as provided below:

4.5.1 In disciplinary proceedings to determine the appropriate sanctions for a student, a preponderance of the evidence is required to determine that the student has violated the Student Code of Conduct.

4.5.2 In disciplinary proceedings to determine the appropriate sanction for a member of the tenured faculty, clear and convincing evidence is required that the misconduct warrants a serious sanction, as outlined in the ECU Faculty Manual Part IX, Section I, section VI.

4.5.3 In disciplinary proceedings to determine the appropriate sanction regarding misconduct by employees not holding a faculty appointment, the standard is whether there is just cause for the recommended action.

4.6 Disciplinary Results. The Result, as provided by federal law is any initial, interim, and/or final decision by any official or entity authorized to resolve disciplinary matters within the institution and must include any sanctions imposed by the institution. Subject to any overriding provision of law, the Result of any institutional disciplinary proceeding that arises from an allegation of sexual assault, domestic violence, dating violence, or stalking will be provided in writing to both parties at the same time, to include:

4.6.1 Any initial, interim, and final decision by any official or entity authorized to resolve disciplinary matters within the institution;

4.6.2 A brief rationale and any sanctions imposed;

4.6.3 The University's procedures for either party to appeal the result of the institutional disciplinary proceeding; and

4.6.4 Notice of any change to the result and a statement explaining when said result becomes final.

# APPENDIX C - TRAINING, EDUCATION AND PREVENTION PROGRAMS

## 1. INTRODUCTION

East Carolina University (the "University") is committed to providing a safe and non- discriminatory environment for all members of the University community. The University prohibits Sexual Assault, Sexual Exploitation, Intimate Partner Violence, Stalking, Sexual and Gender-Based Harassment, Complicity and related Retaliation (together, "Prohibited Conduct"). These forms of Prohibited Conduct are defined in the University's Regulation on Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence (the "Regulation"). This document identifies the University's training, education, and prevention programs related to the Regulation. This document should be read in conjunction with the Regulation. Capitalized terms used and not otherwise defined in this document are defined in the Regulation.

## 2. TRAINING

The University provides training to Students and Employees to ensure they understand the Regulation and the topics and issues related to maintaining an education and employment environment free from harassment and discrimination.

2.1 UNIVERSITY OFFICIALS INVOLVED IN IMPLEMENTING THE REGULATION

The University offers online and in-person training to all officials charged with implementing the Regulation, including the University's Title IX Coordinator, Deputy Title IX Coordinators, University Investigators, Employees who could be selected to sit on a Review Panel as outlined by the Student and Employee Procedures related to the Regulation, and all other Employees involved in responding to reports of Prohibited Conduct. The training varies by official and is based upon the role(s) the official is fulfilling under the Regulation. Topics include working with and interviewing persons reporting Prohibited Conduct; the particular types of conduct that constitute Prohibited Conduct; issues related to Intimate Partner Violence, Sexual Assault, and Stalking; the proper standard of review for complaints under the Regulation (Preponderance of the Evidence); Consent and the role alcohol or drugs can play with respect to Consent; the importance of accountability for Respondents found to have violated the Regulation, and the need for interim measures for the Respondent, the Complainant, and/or the University community; how to determine credibility; how to evaluate evidence and weigh it in an impartial manner; how to conduct prompt, fair, impartial, and thorough investigations and hearings that ensure due process, protect community and individual safety, and promote accountability; confidentiality; the effects of trauma, including neurobiological change; and cultural awareness regarding how Prohibited Conduct may impact persons differently depending on their cultural backgrounds.

University officials charged with implementing the Regulation receive regular training on these and other topics on an annual basis. The University invites national experts to train on these topics on campus and frequently sends University officials to relevant local, regional, and national conferences.

## 2.2 RESPONSIBLE EMPLOYEES

The University offers in-person training to Responsible Employees to ensure they understand the particular types of conduct that constitute Prohibited Conduct, as well as their reporting obligations under the University's separate Reporting Regulation. This training includes practical information on how to identify Prohibited Conduct; the behaviors that may lead to and result in Prohibited Conduct; the potential for re- victimization by responders and its effects on persons reporting Prohibited Conduct; appropriate methods for responding to persons who may have experienced Prohibited Conduct, including the use of nonjudgmental language; and the impact of trauma. This training also includes an explanation of the Responsible Employee's reporting obligations, including how, what, and where to report; the Procedures the University uses for responding to a Complainant's request for confidentiality; how to inform Complainants of their options for support and assistance following an incident of Prohibited Conduct; and the contact information for the University's Title IX Coordinator.

## 2.3 STUDENTS AND EMPLOYEES

The University offers online and in-person training to Students and Employees to ensure they understand the Regulation, including how to report incidents of Prohibited Conduct, and how to access confidential sources following an incident of Prohibited Conduct. Topics include Title IX, VAWA and what constitutes Prohibited Conduct under the Regulation; the definition of Consent, including examples; how the University analyzes whether conduct was unwelcome and the existence of a hostile environment for purposes of Sexual or Gender-Based Harassment; options for reporting Prohibited Conduct; the availability of confidential sources, on and off campus; the University's resolution options for pursuing complaints under the Regulation; the potential sanctions for violating the Regulation; effects of trauma, including neurobiological changes; the role alcohol and drugs often play in incidents of Prohibit Conduct, including the deliberate use of alcohol and/or other drugs to perpetrate Sexual Assault; strategies and skills for bystanders to intervene to prevent sexual, gender-based, and other forms of interpersonal violence; how to report Prohibited Conduct to University Police or local law enforcement and the ability to pursue, simultaneously, a disciplinary and criminal complaint; and the protection against Retaliation afforded by the Regulation.

## 2.4 RESIDENT LIFE STAFF TRAINING

All Students and professionals who are part of Campus Living's Residence Hall Staff receive training regarding alcohol and drug abuse, emotional well-being, students in crisis, and recognizing signs of Sexual Assault and other forms of sexual, gender-based, and interpersonal violence. Residence Life staff are also provided training on the Regulation, how to report Prohibited Conduct as Responsible Employees, and how to support a student reporting Prohibited Conduct. All of the above training is conducted in person via lecture/dialogue format and/or case study scenarios. Title IX, VAWA and Clery Act have an additional training requirement for staff to complete online training modules.

## 3. EDUCATION AND PREVENTION

The University is committed to the prevention of Prohibited Conduct through regular and ongoing education and awareness programs. Incoming Students and new Employees receive primary prevention and awareness programming as part of their orientation, and returning Students and current Employees receive ongoing training and related programs. These programs include (1) statements that the University prohibits Prohibited Conduct, as defined by the Regulation, and related crimes under state and federal law; (2) the definitions of related crimes under state and federal law; (3) the definition of "Consent," for purposes of the Regulation; (4) safe and positive options for bystander intervention that may be carried out by an individual to prevent harm or intervene when there is a risk of Prohibited Conduct against another person; (5) information on risk reduction to recognize warning signs of abusive behavior; and (6) information about the Procedures that the University will follow after an incident of Prohibited Conduct has occurred. The University's education and prevention programs reflect comprehensive, intentional, and integrated programming, initiatives, strategies, and campaigns intended to end Prohibited Conduct. These programs are culturally relevant, inclusive of diverse communities and identities, sustainable, responsive to community needs, and informed by research or assessed for value, effectiveness, and/or outcome. These programs are also designed to consider environmental risk and protective factors as they affect individuals, relationships, institutions, communities, and society.

East Carolina University is dedicated to ending sexual violence in our community. The University's education and prevention programs support this effort; they include (1) awareness programs; (2) bystander intervention programs; (3) ongoing prevention and awareness campaigns; (4) primary prevention programs; and (5) education on risk reduction.

## 3.1. AWARENESS PROGRAMS

Awareness programs assist the community in audience-specific learning, initiatives, strategies, and campaigns to enhance knowledge and share information and resources to prevent violence, promote safety, and reduce perpetration. The University's specific annual awareness programs

are:

• ***Sexual Assault Awareness Month:*** Each year, the University observes Sexual Assault Awareness Month in April with programming around sexual violence awareness and prevention.

• ***Halloween Safety:*** Safety education and awareness programming is provided annually related to Halloween events. Included among this are publicity and social media awareness efforts about safety during the night, as well as an alcohol-free alternative event for students on campus titled Halloween Havoc.

• ***National Hazing Prevention Week:*** Each year, several campus offices collaborate to provide a week of programming aimed at educating the campus on the three types of hazing: subtle, harassment, and violent. The focus is prevention of hazing as well as how to report instances of hazing.

• ***International Women's Day:*** Annually in March, the University celebrates International Women's day with a day-long series of lectures on topics relevant to women's issues. The event is sponsored by the Chancellor's Committee of the Status of Women, the Office of the Provost, the Division of Student Affairs and the Women's Studies program.

• ***Personal Safety Seminars:*** These seminars, conducted by the ECU Police Department, are designed to improve safety habits within the student population. Topics include Resident Hall security, personal safety habits, reporting illegal suspicious activity, crime on campus, and police services. This program allows students the opportunity to address safety-related concerns and to receive an appropriate response.

• ***Alcohol & Drug Awareness Seminars:*** These seminars, conducted by the ECU Police Department, are for the entire campus community and provide information on alcohol and drug abuse. Included are topics such as binge drinking, Drug ID kits, and the effects on the body and legal ramifications of alcohol and drug abuse both on and off campus.

• ***Sexual Assault Police Seminars:*** These seminars, conducted by the ECU Police Department, are for the entire campus community and address acquaintance rape, statistics, victim resources, and reporting procedures. Also provided is information about the various so called "date rape" drugs.

• ***Domestic Violence Awareness Month:*** Each October, the University recognizes in Domestic Violence Awareness Month. Awareness activities to bring attention to issues related to domestic violence are held, to include relevant speakers, participation in the Red Flag Campaign, and a PSA campaign.

• ***Sexual Assault Victim Advocate Presentations:*** The Victim Advocate provides awareness presentations as requested regarding sexual assault and rape. These presentations typically include definitions of sexual assault and rape, definitions and discussion of consent, statistics regarding victims, myths and truths about sexual violence, typical reactions to being the victim of sexual violence, and how to help a friend who has experienced an assault.

• ***Intimate Partner Violence Awareness Presentations:*** The Victim Advocate provides upon request awareness presentations regarding intimate partner violence. These presentations typically include definitions of intimate partner violence, a discussion on the cycle of violence, statistics regarding victims, power and control dynamics and tactics, red flags of abusive behavior, a discussion of why individuals may stay in abusive relationships, and how to help a friend who is experiencing partner violence.

• ***Dry Dock Alcohol Free Tailgate:*** An alcohol free tailgate program for home football games that provides a place for students and their guests who want to enjoy tailgate activities with food, music, and games without consuming alcohol and potentially experiencing associated negative consequences. Dry Dock also offers a great location to have fun without the peer pressure to consume alcohol.

• ***Wellness Passport Events:*** This program provides students with an added opportunity to experience a variety of health and wellness activities, services and programs at ECU relative to the 8 Dimensions of Wellness. A required assignment for all students enrolled in HLTH 1000 and some sections of COAD 1000.

• ***Understanding Title IX Presentations:*** These presentations to students, faculty and staff provide a general understanding of Title IX, as well as how to report issues of concern. Topics covered include sexual misconduct, sexual harassment, sexual violence, consent, ECU policy, who is protected by Title IX, and reporting procedures and resources.

• ***The Clothesline Project:*** A national project to promote awareness to women's issues including domestic violence and rape. This event provides an opportunity for survivors and victim's to share their stories. During the project participants decorate T-shirts in honor of the stories of domestic violence victims and survivors.

• ***Responsible, Who Me?:*** An in person training that educates responsible employees on their duty to report incidents of sexual harassment and misconduct of which they are told or become aware of. The course includes information on Title IX, definitions, reporting requirements, how to report, what information to report, and campus resources available to those who have been affected.

• ***Pirate Ally:*** Pirate Ally offers a training experience modeled after Safe Zone. Targeted at the ECU undergraduate student body, Pirate Ally offers the opportunity to explore vocabulary and discuss issues of important to sexual and gender minority students on campus.

3.2. <u>BYSTANDER INTERVENTION</u>

Bystander intervention consists of safe and positive options that may be carried out by an individual or individuals to prevent harm or intervene when there is risk of an occurrence of Prohibited Conduct. It also includes recognizing situations of potential harm, understanding institutional structures and cultural conditions that facilitate violence, overcoming barriers to intervening, identifying safe and effective intervention options, and taking action to intervene. The University's specific bystander intervention programs are:

• **Stand. Speak. Act.:** ECU's bystander intervention education program, Stand. Speak. Act. aims to help empower faculty, staff and students to become active bystanders who intervene on behalf of potential victims in any situation that is perceived to be unsafe. The program, modeled after the national program Step Up!, is working to engage all communities at the University for a unified prevention effort. The training focuses on giving individuals tools to intervene, as well as building a culture around the premises that (1) violence will not be tolerated, and (2) everyone has a role in preventing violence. Stand. Speak. Act. was developed specifically for ECU by the Campus Recreation & Wellness Office in 2014 and is facilitated by the Victim Advocate on campus. All incoming freshmen hear extensive messaging about bystander intervention during Orientation. Trainings are available for students, staff and faculty at ECU through Campus Recreation and Wellness and the Center for Counseling & Student Development

-Stand: Stand up for what is right. Take a stand against bullying. Stand up to perpetrators. Stand up for your fellow Pirates.

-Speak: Speak out against violence. Speak up on behalf of fellow Pirates. Be honest and direct when you speak in a situation.

-Act: Call the police or 9-1-1. Avoid using violence whenever possible. Recruit help if necessary.

• **Good Samaritan Regulation:** The Good Samaritan Regulation aims to remove potential barriers and facilitate access to emergency medical care in cases of alcohol-related medical emergencies. Through this regulation, the University wishes to increase the likelihood that a person needing medical assistance will receive this assistance by reducing the reluctance of students to seek out appropriate help for themselves or their peers due to fear of potential University consequences.

3.3. <u>ONGOING PREVENTION AND AWARENESS CAMPAIGNS</u>

Ongoing prevention and awareness campaigns consist of programming, initiatives, and strategies that are sustained over time and focus on increasing understanding of topics relevant to, and skills for addressing Prohibited Conduct, using a range of strategies with audiences throughout the University. The University's specific ongoing prevention and awareness campaigns are:

• **Greek Member Education Programming:** Throughout the year, the Office of Greek Life conducts numerous educational programs. The topics of these programs include but are not limited to: hazing, sexual assault, alcohol and drug prevention, and other ways to reduce risk. These programs require at least 50% chapter attendance. In addition, the Interfraternity and Panhellenic Councils conduct programs called Junior IFC and Junior Panhellenic, which mandate similar programming for all new members.

• **Pledge Purple Week:** An annual, week-long initiative focused on education and advocacy centered on the issues of sexual violence, harassment and bullying. Students participating commit by signing the following pledge:

"I will not use my hands or words in acts of violence, bullying, or sexual assault. I will educate myself about what violence, bullying and sexual assault looks like in the Pirate community. I will support my fellow Pirates and safely intervene as an active bystander if I witness scenarios of violence, bullying or sexual assault."

Activities and programs during Pledge Purple Week include guest presenters, It's On Us awareness campaigning, and the Take Back the Night walk, among others.

• **It's On Us:** The Student Government Association initiated and launched the It's On Us media and awareness campaign in 2014 to raise awareness about sexual assault. This national campaign features male and female students, administrators, athletes and other campus faculty and staff speaking about messages related to consent, bystander intervention and responsibility for ending sexual assault. The SGA is committed to maintaining It's On Us as an annual program as part of Pledge Purple Week.

• **Take Back the Night:** A walk to demonstrate support for victims of sexual violence and to promote its end. This is a national rally, march and speak out for survivors and allies.

• **Unlawful Harassment Prevention:** Harassment is also seen as prohibited behavior at ECU. This training offered through the Office of Equity and Diversity is provided to educate the community about why harassment compromises the community and how you can protect yourself from such behavior.

• **Preventing Discrimination and Sexual Violence Online Module:** The University through the Office of Equity and Diversity offers this educational module to educate ECU Employees (permanent, temporary, short-term and student employees) about sexual assault, sex discrimination, Title IX, Campus SaVE Act and other related terms and regulations. This module is mandatory for all employees to complete every five years. New employees must complete this module within ninety (90) days of their hire date.

• **SAFE:** SAFE is an acronym which stands for Staff and Faculty Eyes. The purpose of the SAFE Program is to develop liaisons between the various employees working in academic/administrative buildings and the ECU Police Department in order to increase crime awareness and reporting. The program was designed to promote positive interaction between police officers and staff and faculty members with an overall objective of working together to formulate strategies to solve and prevent crime related problems. The SAFE Program is fashioned after the Neighborhood Community Watch Programs found in many local communities

• **Safe Zone Training:** The Safe Zone program is a symbol of this University's commitment to diversity and inclusiveness. Participation in the Safe Zone training helps to create an ever-expanding network within the ECU community to support our students. Safe Zone training is an opportunity for faculty/staff to talk, learn, and ask questions about sexuality and gender in a non-judgmental, educational environment. The purpose of Safe Zone is to create a network of allies who are willing to talk to students about sexual orientation, gender identity, and gender expression. Trainings are offered throughout the year.

• **Collegiate Recovery Community:** The East Carolina University Collegiate Recovery Community (ECU CRC) provides a supportive environment within our campus culture to help students who have made a commitment or are making a commitment to lead sober, healthy lives. ECU CRC is designed to provide an educational opportunity alongside recovery support to help students thrive academically and socially while actively pursuing their recovery. A variety of educational materials are available to support students in their recovery, and two lounges exist on

campus for the purpose of building a sense of community.

## 3.4. PRIMARY PREVENTION PROGRAMS

Primary prevention programs consist of programming, initiatives, and strategies informed by research or assessed for value, effectiveness, or outcome that are intended to stop Prohibited Conduct before it occurs through the promotion of positive and healthy behaviors that foster healthy, mutually respectful relationships and sexuality, encourage safe bystander intervention, and seek to change behavior and social norms in healthy and safe directions. The University's specific primary prevention programs are:

• *AlcoholEDU:* AlcoholEdu, a product of EverFi, is a research-based program that provides information on alcohol and its effects on the body and mind, as well as information about campus resources for health and wellness that are available to students. Each year, all new students to the University under the age of 21 are required to participate in this online module.

• *Haven:* Haven, a product of EverFi, is a research-based program that provides information on the importance of healthy relationships, including consent, and being a good communicator. Each year, all new students to the University are required to participate in this online module.

• *Pirate Safety:* The Pirate Safety module is designed specifically for new students to ECU to provide valuable information related to safety guidance and tips. Included is information related to "blue light" emergency phones and security cameras on campus; resources such as the ECU Alert texts and the ECU Cares phone line and website; mechanisms for reporting suspicious or concerning behavior; and tips students can take to protect themselves.

• *Alcohol, Tobacco, & Other Drug Committee (ATOD)*: The ATOD Committee is the campus taskforce whose mission is to reduce the ill effects of alcohol, tobacco, and other drugs on our campus. It is comprised of students, administration, faculty, and staff. The committee coordinates prevention, harm-reduction and educational messages on the ECU campus pertinent to alcohol and other drugs to foster a healthier environment. The ATOD Committee also is the group that examines the totality of our alcohol, tobacco, and other drug education on our campus and seeks to add campaigns or initiatives where gaps in prevention programming may be occurring.

• *Healthy Pirates – Peer Health Educators:* A diverse group of students who are trained to teach fellow students about pertinent health issues in a positive, interactive and nonjudgmental manner. Topics range from alcohol and other drugs, smoking cessation, sexuality programming, nutrition, body image, eating disorders, stress management and more. Healthy Pirates provide patient education sessions; facilitate dynamic outreach programs; encourage physical, mental, and spiritual health; create informative awareness events; and promote community support to create a healthy campus culture.

• *Title IX Advisory Council:* The Title IX Advisory Council works to monitor and evaluate Title IX compliance and issues of gender equity.

• *The Committee on Sexual Misconduct Prevention:* Offers recommendations to improve awareness of the University's sexual misconduct policies and procedures. The Committee also reviews the University's prevention efforts and suggests programs and initiatives to enhance the campus climate.

• *Alcohol, Tobacco, & Other Drug Committee (ATOD):* The ATOD Committee is the campus taskforce whose mission is to reduce the ill effects of alcohol, tobacco, and other drugs on our campus. It is comprised of students, administration, faculty, and staff. The committee coordinates prevention, harm-reduction and educational messages on the ECU campus pertinent to alcohol and other drugs to foster a healthier environment. The ATOD Committee also is the group that examines the totality of our alcohol, tobacco, and other drug education on our campus and seeks to add campaigns or initiatives where gaps in prevention programming may be occurring.

• *The Chancellor's Committee on the Status of Women:* This Committee works to improve the lives of women on campus and in the community through events, outreach, and engagement on and off campus. The Committee brings attention to the achievements and challenges that women at East Carolina University face daily.

• *Safe Spring Break:* Each spring, this health fair event is held for students with vendor tables from various campus departments providing information and resources before students leave for break. The goal is to provide students with these resources to encourage better decision making if students choose to go on a spring break trip.

• *COAD 1000 – First Year Seminar:* This one credit hour course is designed for new students to ECU. The objective of the course is to help new student be successful in their first year of college and beyond. Topics covered in this course include understanding the transition from high school to college, student development and motivation, goal-setting, learning styles, memory development, listening skills, note-taking skills, study skills, test-taking skills, communication, critical-thinking skills, ECU academic rules and regulations, and career development issues. COAD 1000 is taught by academic advisors and student affairs educators trained in understanding college student development and the academic and social issues encountered by college students.

• *Health 1000 – Health in Modern Society:* This two credit hour course – the oldest and largest required college personal health course in the United States – provides mostly incoming freshmen the information and skills they need to make informed decisions about leading healthier lives. The course covers mental, social, and physical health problems faced by children and adults in our society.

• *True Life:* True Life is a face-to-face prevention educational session provided during summer Orientation covering topics including alcohol and other drugs, campus safety, sexual health issues, and diversity. Collaboration amongst Office of Student Transitions and First Year Program, Dean of Students office, Ledonia Wright Cultural Center, Student Recreation/Wellness Center, and the Center for Counseling and Student Development allows delivery of this interactive program to all incoming freshmen.

• *Sex Signals:* A sexual assault prevention presentation required for athletes at ECU. The program focuses on sexual assault prevention, bystander intervention, alcohol and substance abuse, and hazing behaviors.

## 3.5. <u>RISK REDUCTION</u>

Risk reduction consists of options designed to decrease perpetration and bystander inaction and to increase empowerment in an effort to promote safety and to help individuals and communities address conditions that facilitate violence. The University's specific risk reduction programs are:

• ***Rape Aggression Defense R.A.D.:*** The ECU Police Department offers this free self- defense class to women within the University community. Rape Aggression Defense is a national program of realistic self-defense tactics and techniques taught for women regardless of their physical conditioning. R.A.D. provides students with knowledge to make an educated decision about personal defense, including information on physical and non-physical options, as well as insight in the mindset of an attacker. This is a 12-hour course that consists of several sessions over four days.

• ***Resisting Aggression with Defense R.A.D.:*** The ECU Police Department offers this free self- defense class to men within the University community. Resisting Aggression with Defense provides realistic self-defense options to men regardless of their level of physical conditioning. R.A.D. aims to empower men to make different decisions when confronted with aggressive behavior. The program provides students with knowledge to make an educated decision about personal defense, including information on physical and non-physical options, as well as insight in the mindset of an attacker. This is a 12-hour course that consists of several sessions over four days.

• ***LiveSafe Mobile Safety App:*** LiveSafe helps students use their mobile devices to report suspicious activity to police through images, video and text messages. Designed to help students be and feel safer, the app uses GPS technology to link students who wish to walk from one place to another on campus and in surrounding areas with other trusted users. This app is free to ECU students.

• ***ECU Cares:*** ECU Cares is a mechanism whereby members of the campus community can make reports of concerning behavior on campus, including acts of sexual misconduct or violence. This tool can be accessed online at <u>www.ecu.edu/ecucares</u> or by phone at (252) 737-5555.

• ***Emergency Blue-Light Phone System:*** Emergency Blue-Light Phones have been strategically placed throughout the campuses of ECU for use in emergency situations. The phones are intended to increase the safety of the campus community and are a quick and easily accessible method of reporting crimes to the ECU Police Department.

• ***Safe Ride & Pirate Express Transportation:*** The Safe Ride program provides "after hours" safe transportation home to any student that calls for this van service. Additionally, Pirate Express provides safe transportation to students in commuting to and from their off-campus apartment complexes to campus, as well as to popular retail and entertainment venues within the city. ECU Student Transit conducts these programs.

In addition, many of the University's training, education, and prevention programs described elsewhere in this Appendix are designed, in part, to provide Students and Employees with risk reduction strategies.



**East Carolina University**
East Fifth Street | Greenville, NC 27858 <u>252.328.6131</u> | <u>Contact Us</u>

© 2016 | <u>Terms of Use</u> | <u>Accessibility</u>

Last Updated: 01-26-2016

# East Carolina University
*Tomorrow starts here.*

# TITLE IX

## GUIDE TO RESOURCES ON CAMPUS AND BEYOND

**ecu.edu/titleIX**

---

## CAMPUS RESOURCES

### Campus Living
252-328-4663
www.ecu.edu/campusliving
Jones Hall, Suite 100
Monday–Friday: 8:00 a.m.–5:00 p.m.
*For assistance during the times listed below, please find the RA Duty phone number listed in your residence hall: Monday–Friday; 5:00 p.m.–8:00 a.m. Weekends; 24 hours/seven days a week*

### Academic Advising Collaborative
252-328-6001
www.ecu.edu/advising
Old Cafeteria Complex, Suite 2500
Monday–Friday: 8:00 a.m.–5:00 p.m.
*Private Resource\*\**
*The Academic Advising Collaborative guides, serves, and supports students by partnering with academic departments and support services, to promote diverse educational experiences, and to foster professional success and responsible citizenship.*

### Dean of Students Office (DOS)
252-328-9297
www.ecu.edu/dos
362 Wright Building
Monday–Friday: 8:00 a.m.–5:00 p.m.
*Private Resource*
*The DOS provides a critical support structure for enriching the overall student experience. The office serves as an advocate for students and as a centralized resource for connecting students with appropriate university and community programs, offices, and individuals. The office supports students in resolving academic, personal, or social issues and concerns; assistance in adjusting to university life; and support in the event of a personal, medical, or family emergency.*

### Disability Support Services
252-737-1016
www.ecu.edu/accessibility
Slay Building, Room 138
Monday–Friday: 8:00 a.m.–5:00 p.m.
*Private Resource*
*The Department for Disability Support Services provides individuals with disabilities support services that will enable them to access programs, services, facilities, and activities of the university and to enhance disability awareness among students, staff, and faculty.*

### ECU CARES
252-737-5555
www.ecu.edu/ecucares
Telephone and Online Report: 24 hours/seven days a week
*Private Resource*
*ECU Cares assists faculty, staff, and students in reporting individuals or circumstances on campus that may be of concern.*

### ECU Employee Assistance Program (EAP)
252-737-1415
*Confidential Resource\**
*The EAP provides mental-health services and support in conjunction with standard employee benefits through the State Health Plan. More information about the EAP can be obtained by contacting the ECU Department of Human Resources.*

### Office for Equity and Diversity (OED)
252-328-6804
www.ecu.edu/oed
Old Cafeteria Building, Suite G-406
Monday–Friday: 8:00 a.m.–5:00 p.m.
*Private Resource*
*The OED serves the entire university as a resource for education pertaining to equity, diversity, inclusion, harassment, discrimination, and affirmative action.*

### Department of Human Resources–Employee Relations
252-328-9847
www.ecu.edu/cs-admin/HumanResources/Employee_Relations.cfm
Human Resources Building
Monday–Friday: 8:00 a.m.–5:00 p.m.
*Private Resource*
*Our Employee Relations personnel are committed to serving the university community in a timely and professional manner. An employee relations specialist is available Monday through Friday from 8:00 a.m. through 5:00 p.m. to speak with you confidentially about any individual, organizational, or grievance issue involving work conditions that may be of concern.*

### Immigration Services
252-737-4769
www.ecu.edu/cs-acad/intlaffairs/immigrationinformation.cfm
215 Spilman Building
Monday–Friday: 8:00 a.m.–5:00 p.m.
*Immigration Services is housed in the Academic Affairs division and works to disseminate information to faculty, staff, and departments as it relates to immigration issues.*

### Office of International Affairs
252-737-4378
www.ecu.edu/intlaffairs
International House: 306 E. Ninth Street
Monday–Friday: 8:00 a.m.–5:00 p.m.
*International Affairs is housed in the Student Affairs division and provides support for any issues or assistance with J-1 Exchange Visitors.*

### LGBT Resource Office
252-737-2514
www.ecu.edu/lgbt
B-103 Brewster Building
Monday–Friday: 9:00 a.m.–5:00 p.m.
*Private Resource*
*The LGBT Resource Office provides support, referrals, and a sense of community for students, faculty, staff, and alumni of all sexual orientations, gender identities, and gender expressions.*

### ECU Police Department
Emergency: 9-1-1
252-328-6787
www.ecu.edu/police
Blount House: 609 E. Tenth Street
24 hours/seven days a week
*Private Resource*

### Student Health Services
252-328-6841
www.ecu.edu/studenthealth
Student Health Center
Monday–Friday: 8:00 a.m.–5:00 p.m.
*Confidential Resource\**
*Student Health is a primary health-care facility located on Main Campus, made up of dedicated professionals providing easily accessible and affordable health care to enrolled students. Our facility specializes in the overall health and well-being of each patient in our campus community by offering a comprehensive list of services. A SANE (Sexual Assault Nurse Examiner) is available through the services provided here.*

### Student Legal Services
Jeff Blick, JD
252-757-3300
www.ecu.edu/cs-studentaffairs/sls
Monday–Friday: 8:00 a.m.–5:00 p.m.
*Confidential Resource*
*ECU Student Legal Services is an advisory service and is not affiliated with the University Counsel's office. It does not provide advice concerning university-related matters against the university or against another student.*

### Office of Student Rights and Responsibilities (OSRR)
252-328-6824
www.ecu.edu/osrr
364 Wright Building
Monday–Friday: 8:00 a.m.–5:00 p.m.
*Private Resource*
*OSRR administers the East Carolina University Student Code of Conduct, which governs students' on- and off-campus conduct.*

### Student Veteran Services
252-737-6542
www.ecu.edu/veterans
D-107 Brewster Building
Monday–Friday: 8:00 a.m.–5:00 p.m.
*The ECU Student Veteran Services is an office at the university that serves our student veterans, service members, and their families. Individuals can access information and resources to assist student veterans through their college experience.*

### ECU Transit SafeRide
252-328-7433
www.ecu.edu/transit/saferide.cfm
Sunday–Saturday; 6:30 p.m.–2:00 a.m.

### Victim Advocate
252-737-1466
www.ecu.edu/victimservices
137 Umstead Hall
24 hours/seven days a week
*Confidential Resource*
*The Victim Advocate provides assistance to victims/survivors or witnesses of a crime or other traumatic event.*

## ECU COUNSELING RESOURCES

*Confidential Resources*
*Sliding scale fees based on ability to pay for those listed below.*

### Center for Counseling and Student Development (CCSD)
252-328-6661
www.ecu.edu/counselingcenter
137 Umstead Hall
Main Office: Monday–Friday; 8:00 a.m.–5:00 p.m.
Crisis: Monday–Friday; 11:00 a.m.–4:00 p.m.
*Confidential Resource\**
*The CCSD provides free individual and group counseling as well as emergency services to enrolled students.*

### Family Therapy Clinic
252-737-1415
www.ecu.edu/cs-hhp/hdfs/ftc.cfm
612 E. Tenth Street
Monday–Friday, 9:00 a.m.–5:00 p.m.

### NAVIGATE Clinic
252-744-6300
www.ecu.edu/cs-dhs/rehb/navigate.cfm
4410 Health Sciences Building
Monday, Wednesday, Friday; 9:00 a.m.–1:00 p.m.

### PASS Clinic
252-737-4180
www.ecu.edu/cs-cas/psyc/ecupass
311 Rawl Building
Monday and Friday; 10:00 a.m.–5:00 p.m.
Tuesday–Thursday; 10:00 a.m.–7:00 p.m.

## ADDITIONAL ECU RESOURCES

| | |
|---|---|
| Campus Wellness | 252-328-5171 |
| Career Services | 252-328-6050 |
| Cashier's Office | 252-328-6131 |
| Financial Aid | 252-328-6610 |
| Faculty Senate Office | 252-328-6537 |
| ITCS | 252-328-9866 |
| Registrar's Office | 252-328-6524 |

*\*Confidential Resource refers to individuals who may not share information without your expressed consent unless there is imminent danger to yourself or others, or as required by law.*

*\*\*Private Resource refers to individuals who share information on a need-to-know basis or as required by law. The information may be shared only with individuals involved in a case.*

# TITLE IX

## GUIDE TO RESOURCES ON CAMPUS AND BEYOND

This list of resources and contact information is only intended to be a guide. These are not recommendations for services that you must use. Please use your own judgment to determine if the resources would be appropriate or beneficial to you and your current needs.

For more information, please visit ecu.edu/titleIX.

**ECU CARES**

## ECU TITLE IX OFFICERS
*Private Resources*

**Title IX Coordinator**
Ms. LaKesha Alston Forbes
*Associate Provost for Equity and Diversity*
252-328-6804
www.ecu.edu/oed
Office for Equity and Diversity
Old Cafeteria Building, Suite G-406
Monday–Friday; 8:00 a.m.–5:00 p.m.

The Title IX Coordinator is responsible for Title IX compliance efforts and responsibilities, including investigations into allegations of discrimination prohibited by Title IX. The Office for Equity and Diversity investigates sexual misconduct complaints against university employees or visitors.

**Senior Deputy Title IX Coordinator**
Ms. Malorie Porter, JD
*Title IX Compliance Officer*
252-328-1406
Office for Equity and Diversity
Old Cafeteria Building, Suite G-406
Monday–Friday; 8:00 a.m.–5:00 p.m.

**Title IX Investigator**
Ms. Kristan Tucker, JD
252-328-9297
Office of Student Rights and Responsibilities
360 Wright Building
Monday–Friday; 8:00 a.m.–5:00 p.m.

## LOCAL RESOURCES

**District Attorneys' Office**
252-695-7200
www.ncdistrictattorney.org/03A/03A.html
Pitt County Courthouse: 100 West Third Street
Greenville, NC
Monday–Friday; 8:30 a.m.–5:00 p.m.
*Private Resource**

**East Carolina Behavioral Health**
1-877-685-2415 (Crisis and Access to Care)
1-866-998-2597
www.ecbhlme.org
1708 E. Arlington Boulevard
Greenville, NC
*Confidential Resource*

**Center for Family Violence Prevention**
252-752-3811 (24-hour Crisis Line)
252-758-4400
1-800-537-2238
www.c4fvp.org
150 E. Arlington Boulevard, Suite D
Greenville, NC
*Confidential Resource*

**Greenville Police Department**
9-1-1 (Emergency)
252-329-4315
www.greenvillenc.gov/government/police
500 S. Greene Street
Greenville, NC
*Private Resource*

**Pitt County Sheriff's Office**
252-902-2800
www.pittcountync.gov/depts/sheriff
Pitt County Courthouse: 100 West Third Street
Greenville, NC
Monday–Friday; 8:00 a.m.–5:00 p.m.
*Private Resource*

**Real Crisis Intervention Services**
252-758-4357
www.realcrisis.org
1011 Anderson Street
Greenville, NC
24 hours/seven days a week
*Confidential Resource*
Real Crisis Intervention Services is a non-profit agency that offers free counseling and an extensive referral service.

**Vidant Medical Center (Hospital)**
252-847-4100
1-800-788-4473 (Emergency Room)
www.vidanthealth.com/medicalcenter
2100 Stantonsburg Road
Greenville, NC
*Confidential Resource*

## COMMUNITY HEALTH RESOURCES
*Confidential Psychiatry/Counseling Resources*

**Bedford Therapy**
252-353-6277
3485 Evans Street, Suite A
Greenville, NC
*Eating disorder specialty*

**CareNet East**
252-355-2801
www.careneteast.org
108 Oakmont Drive
Greenville, NC

**Carolina Centre**
252-757-0123
www.carolinacentre.com
702 Johns Hopkins Drive
Greenville, NC

**Carolina Psychiatry**
252-752-0300
1970 W. Arlington Boulevard, Suite A
Greenville, NC

**East Coast Counseling**
252-752-8602
www.eastccinc.com
620 Lynndale Court, Suite C
Greenville, NC

**Eastern Psychiatric and Behavior Specialists**
252-756-4899
925 Conference Drive
Greenville, NC

**ECU Psychiatry**
252-744-1406
www.ecu.edu/cs-dhs/ecuphysicians/
patient-care/psychiatric.cfm
905 Johns Hopkins Drive
Greenville, NC

**Greenville Counselors**
252-756-3433
www.greenvillecounselors.com
620 Lynndale Court, Suite A
Greenville, NC

**Greenville Psychiatric Associates**
252-758-4810
502 Red Banks Road, Suite A
Greenville, NC

**Integrated Family Services**
252-439-0700
www.integratedfamilyservices.net
2269 Stantonsburg Road
Greenville, NC

**Medical Park Psychiatric Associates**
252-758-6080
707 W. H. Smith Boulevard
Greenville, NC

## REGIONAL AND NATIONAL RESOURCES

**Help for Victims, Department of Justice**
www.ncdoj.gov/Help-for-Victims.aspx
*When bad things happen, the Attorney General's office offers help to victims in North Carolina. The Address Confidentiality program helps victims keep their address safe from abusers. The program gives anonymity to survivors of domestic violence, sexual assault, and stalking. Seniors in nursing homes and their loved ones can report suspected elder abuse or fraud at any facilities that get Medicaid funds. Under North Carolina law, crime victims are supposed to be the first in line for payment when criminals pay restitution to the court. If a criminal who harmed you owes you restitution, our office of Victims and Citizens Services may be able to help. Victims of consumer rip-offs can get assistance from the Attorney General's consumer specialists. The specialists know the law and know how to help. The same goes for identity theft victims who want to get their good names and their financial security back. Victims of crime can learn more about the criminal appeals process and the Crime Victims' Bill of Rights.*

**National Sexual Violence Resource Center (NSVRC)**
1-877-739-3895
www.nsvrc.org
*The NSVRC's Mission is to provide leadership in preventing and responding to sexual violence through collaboration, sharing and creating resources, and promoting research.*

**NC Address Confidentiality Program**
919-719-6785
www.ncdoj.gov/getdoc/772ff33a-b9eb-4c98-aca6-
c50c6d1ad07b/2-5-4-1-Address-Confidentiality-
Program.aspx
*The Address Confidentiality Program helps protect survivors of domestic violence, sexual assault, stalking, and human trafficking by keeping abusers from discovering their new address.*

**NC Victim Assistance Network**
1-800-348-5068
www.nc-van.org
*The NC Victim Assistance Network is a statewide nonprofit organization that provides information, support, and advocacy to victims of all types of crimes.*

**Rape, Abuse, and Incest National Network (RAINN)**
1-800-656-HOPE (1-800-656-4673)
www.rainn.org
*RAINN is the nation's largest anti-sexual violence organization, operating the National Sexual Assault Hotline in partnership with more than 1,000 local sexual assault service providers across the country and the DoD Safe Helpline for the Department of Defense. RAINN also carries out programs to prevent sexual violence, help victims, and ensure that rapists are brought to justice.*

**Statewide Automated Victim Assistance and Notification (NC SAVAN)**
1-877-NC-SAVAN (1-877-627-2826)
www.ncsavan.org
*Confidential Resource*
*NC SAVAN is a criminal justice information-sharing system that supports automated victim notification. NC SAVAN operates a 24-hour toll-free automated offender information and notification service.*

**Victims Compensation Assistance**
1-800-826-6200
919-733-7974
www.ncdps.gov/victimservices
*Private Resource*
*Victims Compensation Services reimburses citizens who suffer medical expenses and lost wages as a result of being an innocent victim of a crime committed in North Carolina.*

*Confidential Resource refers to individuals who may not share information without your expressed consent unless there is imminent danger to yourself or others, or as required by law.*
**Private Resource refers to individuals who share information on a need-to-know basis or as required by law. The information may be shared only with individuals involved in a case.*

East Carolina University is committed to the equality of educational opportunity and does not discriminate against applicants, students, or employees based on race, color, national origin, religion, gender, age, creed, sexual orientation, or disability. An equal opportunity/affirmative action university, which accommodates the needs of individuals with disabilities.

♲ Printed on recycled paper. U.P.C. 14-13. ... 100,000 copies of this public document were printed at a cost of ... C.S. 16-1246

Case 4:18-cv-00137-BO   Document 44-11   Filed 10/23/18   Page 40 of 40