UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Civil Action No.: 4:18-cv-137-BO

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | **REPLY IN SUPPORT OF** |
| | ) | **DEFENDANTS' MOTION TO** |
| v. | ) | **DISMISS** |
| | ) | |
| EAST CAROLINA UNIVERSITY, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ARGUMENT IN REPLY

### I.  PLAINTIFF HAS NOT SUFFICIENTLY PLED A PLAUSIBLE GENDER BIAS CLAIM.

Defendants challenge Plaintiff's erroneous outcome Title IX claim based on failure to allege "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Yusuf v. Vassar College*, 35 F. 3d 709, 715 (2d Cir. 1994).

#### A. Alleged pro-victim or pro-compliance-with-Title-IX bias in administrators does not equal anti-male bias.

Plaintiff urges the Court to adopt a more generous pleading standard for discrimination claims than Fourth Circuit allows, and requests that the Court equate expression that a university should prevent sexual assault or comply with Title IX, to anti-male bias. Plaintiff relies on *Doe v. Columbia University*, 831 F.3d 46, 56-57 (2d Cir. 2016), which was based on the Second Circuit's

more lenient pleading standard for discrimination in Title VII claims. However, the Fourth Circuit no longer applies the more lenient *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) pleading standard to discrimination claims after *Iqbal* and *Twombly*. *See Doe v. Marymount Univ.*, 297 F.Supp.3d at 581, fns. 7-9 ("Although the Fourth Circuit has yet to address the pleading standard in Title IX cases, it is unlikely that the Fourth Circuit would adopt the Second Circuit's modified 'minimal plausible inference' standard given the Fourth Circuit's recent Title VII decisions.'"); *McCleary-Evans v. Maryland Dep't of Transp.*, 780 F.3d 582, 586 (4th Cir. 2015).[1]

A majority of courts have declined to adopt *Doe v. Columbia University's* reasoning, holding that its inferences are impermissible or the allegations of bias were merely conclusory. *See Doe v. Univ. of Colo. Boulder*, 255 F.Supp.3d 1064, 1074-75 (D. Colo. 2017) (comparing cases that "have continued to accept conclusory allegations of gender bias" with a "majority of cases" that held such

---

[1] Many courts believe that *Iqbal* and *Twombly* now preclude plaintiffs from surviving dismissal on conclusory allegations of gender bias that previously may have sufficed. *See Streno v. Shenandoah Univ.*, 278 F.Supp.3d 924, 929-32 (W.D. Va. 2017) (holding that allegations that gender-conforming sexual misconduct complainants' cases were heard, while gender-nonconforming plaintiff's was not, without more, would authorize a "fishing expedition" contrary to *Iqbal/Twombly*); *Doe v. Regents of the Univ. of California*, No. 215CV02478SVWJEM, 2016 WL 5515711, at *4-5 (C.D. Cal. 2016) (also collecting cases); *Austin v. Univ. of Oregon*, 205 F.Supp.3d 1214, 1223 (D. Or. 2016) (same).

4829-6874-5090, v. 3

allegations "largely tend to show, if anything, pro-victim bias, which does not equate to anti-male bias.")

In arguing that Bonner, Wilson, and Bellflower were victim advocates or that hearing participants had "criminal justice backgrounds" is sufficient to allege anti-male bias, Plaintiff urges this Court to infer anti-male bias from pro-victim or anti-violence expression. (*See* DE 50 ["Resp."] pp. 14-15). Plaintiff also contends anti-male bias is shown in alleging that Hardy "publicly cit[ed] statistics about college women and sexual assault" and said OCR "forced...colleges and universities to evaluate existing reporting processes associated with Title IX." (*Id.*).Plaintiff argues these allegations distinguish this case from those rejecting "generalized" OCR pressure or administrators with "multiple roles" as insufficiently alleging bias. However, to infer anti-male bias from these allegations, the Court must impermissibly equate pro-victim or pro-Title IX-compliance expressions with anti-male bias.

Plaintiff cites a case illustrating the inherent difference between pro-victim bias and anti-male bias. In *Doe v. Marymount Univ.*, 297 F.Supp.3d 573, 585 (E.D. Va. 2018), the plaintiff alleged specific statements his adjudicator made in a prior case where a male student alleged sexual assault. The adjudicator asked the student whether he was aroused when he was assaulted, and expressed disbelief when he said no. 297 F.Supp.3d at 585-86. These offensive statements demonstrated "discriminatory views" toward male

3

students, regardless of whether the student was a complainant or respondent. *Id.* at 586. Here, as discussed in more detail below, Plaintiff has failed to allege facts showing anti-male bias, as opposed to pro-victim or pro-compliance views.

**B. The other cases cited by Plaintiff are distinguishable.**

In his Response, Plaintiff points to other cases where a plaintiff survived a motion to dismiss on gender bias, but they are easily distinguishable.[2]

In *Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018), the Sixth Circuit held the plaintiff sufficiently pled gender bias by alleging that the panel discredited the testimony of Doe and his male witnesses, Doe's fraternity brothers, but credited testimony by Roe and her female witnesses, Roe's sorority sisters. Because the plaintiff alleged facts suggesting the male witnesses were held to a different standard than female witnesses, the Sixth Circuit held that gender bias was pled. *Id.* at 587.

Here, Plaintiff neither testified nor presented witnesses in the subject proceedings. Plaintiff's alleged procedural flaws, discussed in more detail below, such as the panel's alleged refusal to ask Complainant two questions Plaintiff submitted, do not parallel *Baum's* disparity in treatment of male and female witnesses. Plaintiff has not identified the questions, nor their nature or

---

[2] These authorities acknowledge that "institutional pressure," standing alone, is insufficient to allege gender bias, and discuss what additional factual matter is sufficient.

4829-6874-5090, v. 3

purpose, so no gender bias can be inferred regarding the panel's decision to screen them. (*See* DE 1 ["Compl."] ¶157; Resp. at 15). As such, the facts in *Baum* are easily distinguished.

In *Doe v. Miami University*, 882 F.3d 579, 593 (6th Cir. 2018), the plaintiff alleged a pattern of gender-biased decisionmaking that affected his case–general failure to pursue men's complaints, and, in his case, investigating the female's sexual misconduct complaint against him, but not his counter-complaint of sexual misconduct against her. *Id.* at 590-91, 593. These allegations suggested the university did not take male complaints of sexual misconduct seriously, which established anti-male bias, and are distinguishable.

Plaintiff's allegations of gender-biased training are likewise insufficient.[3] Although Plaintiff does not need to allege each date, he must factually allege that gender-biased training occurred <u>before</u> his hearing, which he has not. (*See* Compl. ¶¶39-47, 142).[4] Plaintiff's allegations that training was

---

[3] Plaintiff inaccurately characterizes the then-prevailing guidance, the 2014 *Questions and Answers* [DE 44-3] ("Q&A"), which directs: "Questioning about the complainant's sexual history with anyone other than the alleged perpetrator should not be permitted." Here, Plaintiff alleged no sexual history between Plaintiff and Complainant that the panel could have asked about or considered.

[4] Plaintiff's suggestion that the Court review alleged ATIXA documents that were not attached or incorporated by reference in the Complaint is inappropriate on a Rule 12(b)(6) motion to dismiss.

Case 4:18-cv-00137-BO   Document 51   Filed 12/14/18   Page 5 of 17

"trauma-informed," (as required by OCR guidance), did not allege the approach applied only to female complainants, and would not show anti-male bias. (*See* Q&A at 28-29, 32, 38, 42, 44-45).

Plaintiff alleges, at most, pro-victim or pro-compliance bias, not anti-male bias. As such, Plaintiff's Title IX claim should be dismissed.

## II. THE UNIVERSITY AND OFFICIAL-CAPACITY DEFENDANTS HAVE NOT WAIVED SOVEREIGN IMMUNITY.

Plaintiff argues Defendants waived Eleventh Amendment immunity by appearing and defending this litigation, citing *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613 (2002). In *Lapides*, a state university removed a suit to federal court, voluntarily invoking federal jurisdiction, and could not thereafter claim sovereign immunity. 535 U.S. at 619-21. *Lapides* is inapposite, because Plaintiff's Complaint, not voluntary removal, involuntarily subjected Defendants to suit in federal court. Further, the university faced only state-law claims, not federal claims where sovereign immunity was waived. 535 U.S. at 617-18. Here, this Court has jurisdiction over Plaintiff's Title IX claims against the University. 42 U.S.C. § 2000d-7(a)(1) (abrogating sovereign immunity for Title IX claims). Defendants properly appeared and defended Plaintiff's Title IX claims and claims against individual-capacity Defendants. Finally, the Motion for Preservation Order was immediately necessary to preserve documents that Plaintiff alleges

support his Title IX claims, due to Plaintiff's efforts to obtain an expunction, which would destroy those documents. Defendants, by opposing potential spoliation, did not "voluntarily" waive jurisdiction on Plaintiff's due process and breach of contract claims. *See DeCecco v. Univ. of S. Carolina*, 918 F.Supp.2d 471, 498-99 (D.S.C. 2013) (sovereign immunity not waived by participation in discovery). Defendants properly raised sovereign immunity in the first pleading addressing Plaintiff's substantive claims, accompanied by alternative arguments challenging Plaintiff's claims on the merits.

As Plaintiff requests injunctions only to reverse his disciplinary proceedings and destroy related records, "the heart of the dispute involves past conduct and would require the Court to issue an order which would be, fundamentally, retrospective." *See Biggs v. N. Carolina Dep't of Pub. Safety*, No. 5:17-CV-120-BO, 2018 WL 5621964, at *3 (E.D.N.C. 2018). Thus, the *Ex parte Young* exception for prospective relief does not apply. Defendants have sovereign immunity as to Plaintiff's due process and breach of contract claims, which should be dismissed.

## III.   PLAINTIFF HAS NOT SUFFICIENTLY PLED A DUE PROCESS CLAIM.[5]

---

[5] While Defendants did not challenge Plaintiff's due process claims as to the existence of a property or liberty interest, they do not "concede" that Plaintiff had a property or liberty interest. Neither the Supreme Court nor the Fourth Circuit has explicitly recognized such a right. *Sansotta v. Town of Nags Head,* 724 F.3d 533, 540 (4th Cir. 2013)).

### A. Plaintiff is not entitled to "heightened" protection.

Plaintiff argues that "heightened" due process protections applied because he faced potential expulsion. However, no authority requires "heightened" due process for university disciplinary actions. Rather, the Fourth Circuit has held that a student facing possible expulsion or suspension must receive "advance notice of the charges, a fair opportunity to be heard, and an impartial decision-maker." *Henson v. Honor Comm. of Univ. of Va.*, 719 F.2d 69, 74 (4th Cir. 1983); *see also Butler v. Rector & Bd. of Visitors of Coll. of William & Mary*, 121 F.App'x 515, 519-20 (4th Cir. 2005).

Plaintiff appears to rely on *Doe v. Alger*, 228 F.Supp.3d 713, 729 (W.D. Va. 2016), which held a student facing expulsion should receive a "statement of the specific charges and grounds which, if proven, would justify expulsion under the regulations of the [University]." However, this opinion is not binding precedent, and in fact conflicts with Fourth Circuit cases. The Fourth Circuit requires "only that such descriptive explanation be afforded as to permit [the plaintiff] to identify the conduct giving rise to the dismissal and thereby enable [her] to make a response." *Hanton v. Gilbert*, 842 F.Supp. 845, 852 (M.D.N.C.), *aff'd*, 36 F.3d 4 (4th Cir. 1994) (*citing Linton v. Frederick Cty. Bd. of Cty. Comm'rs*, 964 F.2d 1436, 1440 (4th Cir. 1992)). Based on this standard, Plaintiff has failed to allege facts to support a due process claim.

4829-6874-5090, v. 3

## B. Plaintiff received sufficient due process in his administrative suspension.

Plaintiff argues that Defendants violated his due process rights by suspending him "before the investigation commenced and any determination was made that a hearing was necessary," and providing "neither sufficient notice of the university charges nor a meaningful opportunity to be heard." (Resp. p. 19).

In arguing he received insufficient notice, Plaintiff contends that Defendants rely on "information that Plaintiff may have gleaned from other sources." (*Id.*) To the contrary, Defendants gave Plaintiff sufficient information regarding his charges, including: 1) that the claims involved Title IX violations regarding his sexual encounter with Complainant; (Compl. ¶¶88-89); 2) M.K.'s statement regarding Plaintiff admitting to sex with Complainant (Compl. ¶89); and 3) that the same incident was under criminal investigation, in which Plaintiff faced charges that he raped Complainant. (*Id.*) Moreover, Plaintiff was informed in writing that his administrative suspension was related to his arrest for sexual assault against Complainant. (Compl. ¶¶90, 95).

OCR guidance required interim measures immediately upon ECU's learning of the allegation, not after an investigation. (Q&A, p. 35 (requiring "interim measures to protect complainant in the educational setting" even if

4829-6874-5090, v. 3

an investigation has not yet begun); *see also id.* pp. 39-40 (requiring interim

measures as soon as officials are made aware of the complaint)).

Plaintiff concedes that he received the opportunity to be heard at a

December 2, 2015 meeting. (Compl. ¶89). Plaintiff attempts to characterize

Defendants' argument as asserting that Plaintiff "waived" his due process

rights. Conversely, Defendants simply noted that Plaintiff had opportunities

to be heard, and declined based upon his attorney's advice. (*Id.*). Plaintiff also

appealed his suspension. (*Id.* ¶98). As such, Plaintiff received sufficient due

process regarding his administrative suspension.

### C. Plaintiff received a fair hearing.

Plaintiff contends that he proffered "forensic evidence" that Complainant

took birth control to establish that they discussed her birth control before

sexual activity. (Resp. p. 21). However, simply introducing "forensic evidence"

of her birth control would not have proved such a conversation, and Plaintiff

declined to testify at the hearing. Plaintiff does not allege that he informed the

panel of his conversation with Complainant, nor that he told anyone why he

believed birth control was relevant. Without this context, birth control

evidence relates only to "complainant's sexual history with anyone other than

the alleged perpetrator," which was prohibited. (Q&A, p. 38). As such, the

panel reasonably excluded birth control evidence, which did not violate due

process. *See e.g., Tanyi v. Appalachian State Univ.*, No. 5:14-CV-170RLV, 2015 WL 4478853, at *3 (W.D.N.C. 2015).

Plaintiff's polygraph test, Complainant's social media posts, and evidence Complainant enrolled at another university were also properly screened by the panel, as discussed in Defendants' prior briefing.

### D. Plaintiff was not denied any "right to cross examination."

Plaintiff contends that he was prevented from conducting cross-examination. However, as stated in OCR's September 22, 2017 Dear Colleague letter, then-applicable federal guidance "discouraged cross-examination by the parties, suggesting that allowing cross-examination may itself actually violate Title IX." In fact, OCR guidance at the time specifically stated: "OCR does not require that a school allow cross-examination of witnesses, including the parties, if they testify at the hearing." (Q&A, p. 38). Defendants cannot be held liable for following prevailing federal guidance.

Moreover, Plaintiff was allowed to submit questions, which were screened by the panel. This also complied with OCR guidance, which stated: "A school may… allow the parties to submit questions to a trained third party (e.g., the hearing panel) to ask the questions… OCR recommends that the third party screen the questions… and only ask those it deems appropriate and relevant to the case." (Q&A F-6, p. 31).

### E. **Plaintiff's allegation that the preponderance of the evidence standard was not followed is conclusory and insufficient.**

Despite Plaintiff's assertions, Defendants do not take a "punitive posture against Plaintiff" or "mischaracterize" his decision not to testify at the disciplinary hearing. Rather, Defendants simply point out that Plaintiff declined to testify, which left Complainant and M.K. as the only testimony in the record. Both presented testimony that supported a finding of misconduct, which meant the only competent evidence in the record supported a finding of misconduct. Even if the panel allowed evidence of Complainant's birth control and Plaintiff's polygraph test results, sufficient record evidence supported the panel's finding of misconduct.

### F. **Plaintiff received a meaningful appeal process.**

Plaintiff contends that Defendant Hardy, who heard his appeal, was biased because she served as spokesperson for Title IX compliance. Plaintiff does not explain how this would establish bias. "Due process does not require absolute neutrality on the part of university officials tasked with investigating and administering disciplinary hearings." *Gulyas v. Appalachian State Univ.*, No. 516CV00225RLVDCK, 2017 WL 3710083, at *4, *reconsideration denied*, 2017 WL 4294109 (W.D.N.C. 2017). It is when the official directs the proceedings with the primary purpose of obtaining a conviction rather than seeking out the truth that the line is crossed. *Id.* While Plaintiff makes

numerous conclusory allegations of bias, the facts alleged would not support an inference that Hardy heard his appeal with the primary purpose of obtaining a conviction, rather than seeking out the truth. Instead, Plaintiff essentially lists his appeal grounds, and contends that Hardy's failure to reverse the decision establishes disqualifying bias. Such conclusory allegations do not establish that Plaintiff's appeal was not meaningful.

## IV. PLAINTIFF HAS NOT SUFFICIENTLY PLED A VALID CONTRACT.

As discussed by both parties, no North Carolina court has ever ruled that a student handbook constitutes a valid contract between the student and university. Resp. at 28-29; *see Chandler v. Forsyth Tech. Cmty. Coll.*, 294 F.Supp.3d 445, 458-59 (M.D.N.C. 2018) (citing cases). Plaintiff's attempt to distinguish these cases, by arguing that ECU's policies describe a university-student "agreement," does not establish a contract under North Carolina law. (S*ee* Resp. p. 29). Even where a handbook recites an "agreement" or "understanding," it is not a contract. *Norman v. Tradewinds Airlines, Inc.*, 286 F.Supp.2d 575, 586 (M.D.N.C. 2003) (citations omitted). Under this principle, a student handbook must expressly state that it forms a "contract" between student and university, rather than an "agreement" or "understanding." ECU's policies do not. Similarly, a signed acknowledgment that Plaintiff received

4829-6874-5090, v. 3

policies does not create a contract under North Carolina law. *See Howell v. Town of Carolina Beach*, 106 N.C. App. 410, 414-15 (1992).

Plaintiff has not alleged a valid contract; thus, his breach of contract claims should be dismissed.

Respectfully submitted, this the 14th day of December, 2018.

*/s/ Dan M. Hartzog, Jr.*
DAN M. HARTZOG
N.C. State Bar No. 5648
DAN M. HARTZOG JR.
N.C. State Bar No. 35330
KATHERINE BARBER-JONES
N.C. State Bar No. 44197
E-mail: dmh@cshlaw.com
          dhartzogjr@cshlaw.com
          kbarber-jones@cshlaw.com
CRANFILL SUMNER & HARTZOG LLP
Attorneys for Defendants
Post Office Box 27808
Raleigh, North Carolina 27611-7808
Telephone: 919/828-5100
Facsimile: 919/828-2277

4829-6874-5090, v. 3

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.2(f)(4), the undersigned hereby certify and attest that this Reply Memorandum complies with the word count limits set forth in Local Civil Rule 7.2(f)(2)-(3). Excluding the case caption, the signature block, any required certificates, any table of contents, any table of authorities, and any attachments, exhibits, affidavits, and other addenda (393 words), the word count of this Memorandum (3191 words) does not exceed 2,800 words, as computed using the word count function of the word processing program used to create this Memorandum.

*/s/ Dan M. Hartzog Jr.*
*/s/ Katherine Barber-Jones*

4829-6874-5090, v. 3

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Civil Action No.: 4:18-cv-137-BO

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CERTIFICATE OF SERVICE** |
| | ) | |
| EAST CAROLINA UNIVERSITY, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

I hereby certify that on December 14, 2018, I electronically filed the
foregoing with the Clerk of Court using the CM/ECF system, which will
transmit the document to the following counsel of record:

NESENOFF & MILTENBERG, LLP
Andrew T. Miltenberg, Esq.
Kara L. Gorycki, Esq.
363 Seventh Avenue, Fifth Floor
New York, NY 10001
amiltenberg@nmllplaw.com
kgorycki@nmllplaw.com
*Attorneys for Plaintiff John Doe*

WHITE & ALLEN, P.A.
Matthew S. Sullivan, Esq.
106 S. McLewean Street
P.O. Box 3169
Kinston, NC 28502
msullivan@whiteandallen.com
*Local Civil Rule 83.1 Counsel*
*for Plaintiff John Doe*

This the 14th day of December, 2018.

/s/ Dan M. Hartzog Jr.
DAN M. HARTZOG
N.C. State Bar No. 5648
DAN M. HARTZOG JR.
N.C. State Bar No. 35330
KATHERINE BARBER-JONES
N.C. State Bar No. 44197

16

E-mail: dmh@cshlaw.com
dhartzogjr@cshlaw.com
kbarber-jones@cshlaw.com
CRANFILL SUMNER & HARTZOG LLP
Attorneys for Defendants
Post Office Box 27808
Raleigh, North Carolina 27611-7808
Telephone: 919/828-5100
Facsimile: 919/828-2277